STATE OF NORTH CAROLINA v. ELZIE McCALL

No. 20

(Filed 6 April 1976)

**Criminal Law §§ 83, 162, 163— competency of wife to testify against husband — failure to object to jury argument and charge**

> Where evidence is rendered incompetent by statute, it is the duty of the trial judge to exclude it, and his failure to do so is reversible

error, whether objection is interposed and exception noted or not; therefore, the trial court in a first degree murder prosecution erred in (1) allowing cross-examination of defendant with respect to his wife's failure to testify, (2) allowing the district attorney's jury argument concerning the failure of defendant's wife to testify, and (3) failing to instruct the jury that defendant's wife could not be compelled to testify against him and that the fact that defendant chose not to call his wife as a witness could not be used to the prejudice of the defense. G.S. 8-57.

DEFENDANT appeals from judgment of *Grist, J.,* July 1975 Criminal Session, TRANSYLVANIA Superior Court.

Defendant was placed on trial upon a bill of indictment, proper in form, charging him with first degree murder of Brent McCall on 26 January 1975 in Transylvania County.

The State's evidence tends to show that on 26 January 1975 defendant shot and killed Brent McCall with a 30-30 rifle. The homicide occurred in the yard of a house owned by Viola McCall and occupied by her son Brent McCall. The only persons present when the shooting occurred were Viola McCall, Brent McCall, and the defendant. A neighbor named Otis Morgan heard the shot and went to the scene. Defendant stated to Mr. Morgan that he had told Brent McCall "that if Brent McCall ever got into it with Elzie McCall again that he, Elzie McCall, would kill Brent and then Elzie said 'There he lays.'" Mr. Morgan testified that defendant was drinking and appeared to be under the influence of alcohol. No weapon was observed in Brent McCall's hand or on the ground in the area where his body was lying.

The State's evidence further tends to show that defendant and Viola McCall had been living together in defendant's trailer for about nine months. During that period defendant was separated from his lawful wife. He obtained a divorce in February 1975 and married Viola McCall on 26 April 1975.

The State's evidence further indicates that defendant got along well with Brent McCall except when Brent was drinking. Brent had a violent temper when drinking and would tear up the house and often assault his mother when she was present to clean and cook for him.

Following the shooting, officers were called and defendant was taken into custody. While being transported to jail, defendant was warned of his rights and stated he had nothing to hide.

He told the officers he had drunk about a half pint of whiskey in the eight hours preceding the shooting and had been asleep about three hours before he shot Brent McCall. He said that Brent had "beat[en] me and his mother three times and I told him that if he did it again, I would kill him."

Defendant testified as a witness in his own behalf. He said he arrived at Brent McCall's place of residence about 3 p.m. on 26 January 1975, went to bed and slept for about three hours. When he awakened, Brent McCall came into the bedroom and they had a friendly conversation. When Viola McCall finished mopping the kitchen, she got her pocketbook and prepared to leave. Brent McCall knocked some items from the counter to the kitchen floor, looked over at defendant and said, "You are going to buy me a pint of whiskey before you go home." When defendant told Brent he did not have the money to buy a pint of whiskey, Brent attacked defendant, knocking him to the floor. Brent McCall weighed about 180 pounds, while defendant weighed 140 pounds. After Brent knocked defendant down he took him by the right arm and began slinging him around. Defendant went to his truck and attempted to open the door, but Brent slammed the door shut and backed up against it, repeating his former assertion that defendant was not leaving until he bought Brent a pint of whiskey. Brent was in a serious rage by this time. Defendant opened the tool box on the side of his truck, got his gun and yelled for Viola who was coming off the porch. Viola McCall screamed as Brent, who was next to the porch, took a step forward and threw a rock. Defendant then raised his gun and pulled the trigger. After the shot, he put the rifle back in the tool box, ran to Otis Morgan's house nearby and asked Mr. Morgan to call the rescue squad and the sheriff's department. When Deputy Sheriff Fisher arrived defendant told him what had happened and got into the back seat of the deputy's car.

Defendant testified that Brent McCall had attacked him and Viola McCall on two or three other occasions but said he did not intend to kill Brent when he fired the gun. He said it was "a spur of the moment" thing and that he acted in self-defense. He said he was not under the influence of alcohol but was afraid of Brent McCall, knowing what he could do and what he had done in the past.

The evidence discloses that Brent McCall was twenty-five years of age and defendant was fifty-four.

State v. McCall

The jury convicted defendant of murder in the first degree and he was sentenced to death. Defendant appealed and assigns errors discussed in the opinion.

*Stepp, Groce, Pinales & Cosgrove by W. Harley Stepp, Jr. and Edwin R. Groce, attorneys for defendant appellant.*

*Rufus L. Edmisten, Attorney General; Thomas B. Wood, Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

Defendant moved to nonsuit the first degree murder charge on the ground that evidence of premeditation and deliberation was insufficient to carry the capital charge to the jury. Denial of the motion is assigned as error. When the evidence is taken as true and considered in the light most favorable to the State, as we are required to do, it is sufficient to carry the case to the jury on all counts encompassed by the bill of indictment. We overrule this assignment without further discussion.

Viola McCall was an eyewitness to the shooting of her son by defendant on 26 January 1975. She thereafter married defendant on 26 April 1975. She attended defendant's trial but was not examined as a witness by him.

After defendant had testified that he and Viola McCall were not married on 26 January 1975 when the homicide occurred but "were making plans," the district attorney was permitted over objection to cross-examine him as follows:

"Q. You knew if you married her she couldn't testify against you, didn't you?

A. Yes, I knew it."

The district attorney then continued his cross-examination without further objection as follows:

"Q. All right, you had been courting her for three years, and you hadn't married her during that three years, but as soon as she became eligible to testify against you as to what happened when you shot Brent, you married her in April, 1975, didn't you?

A. I can't answer that question.

Q. Why can't you answer it?

A. Because you stated it wrong.

Q. Well, you just state to the jury how it happened then.

A. What?

Q. How you happened to marry Viola knowing that she could be compelled to testify against you after the killing in January, 1975, happened to marry her in April, 1975?

A. I put in for my divorce in November and I had a year to wait. I discussed the matter with Brent, and I discussed the matter of marriage with Viola. Viola and I had plans to marry long before this incident occurred. I filed separation papers in November of 1973, and to the best of my knowledge I got my divorce in February, 1975, in Asheville, North Carolina. Mr. Potts, my attorney, represented me in my divorce, and Mr. Potts is my lawyer in this case."

Thereafter, the district attorney, without objection, made the following argument to the jury:

"While we are talking about Viola, you know I was glad Mr. Potts pointed her out. Really, I was glad that Mr. Potts pointed her out to let you know that she was in the Courtroom. Let me tell you something the State of North Carolina cannot put her on the stand, but she can voluntarily go on the stand and her husband can call her. Her husband can call her on the stand if he wants to and Mr. Potts can put her on there. I can't touch her. I wish I could have, but Mr. Potts could put her on there. If what Elzie said was the truth, why didn't Mr. Potts put her on the stand? I'll tell you why he didn't put her on the stand because he knew I would have the right to examine her, cross examine her. The law of North Carolina is that a wife cannot testify against her husband. This is a good law, and I'm glad we have it, because the home ought to be the most important and that's the foundation of this country, is the home and the family, and until she married Brent—Elzie McCall in April, 1975, I could have put her on the stand. If this case had been tried in January or February, 1975, I could have put her on the stand and let her tell you exactly what she saw. She was standing right outside of the house. She said she was—that's Elzie's testimony. He said that she went right over to Brent right

State v. McCall

after he was shot and gave him mouth to mouth resuscitation. Why in the world didn't she corroborate what her husband said about it, her present husband, if that's the way it happened? There was only three people there. That was Brent, Viola and Elzie, and Brent can't talk.

\*   \*   \*   \*

"Is there any question in your mind that that young boy was lying right here when his mother came over to him and started giving him mouth to mouth resuscitation? Do you know what she did whenever she went down to South Carolina in April, 1975, and performed a ceremony of matrimony with this man right here? She sealed her lips forever to be required by the State of North Carolina to tell you the truth about what happened on January the 26th, 1975. *You ought to go take the flowers off your son's grave.* Any woman that would do that. It's just as bad as her going and taking the flowers off her son's grave, because he was a human being. He was entitled to live and because she wanted to have some personal enjoyment and pleasures with her boyfriend because he had worn out his previous wife, then she goes and seals her lips. Are you going to turn this man loose because of that? If you do, you do. I'll tell you it makes my blood boil and if there's anything that I could do under the law of the State of North Carolina, I'll guarantee you, I'd do it or I'd try to do it."

The quoted cross-examination of defendant constitutes his first assignment of error. The quoted argument of the district attorney to the jury constitutes defendant's second assignment of error. The failure of the trial court to instruct the jury that (1) defendant's wife could not be compelled to testify against him and (2) the fact that defendant chose not to call his wife as a witness could not be used to the prejudice of the defense, constitutes defendant's third assignment of error. These assignments being interrelated, we consider them together.

G.S. 8-57 reads in pertinent part as follows: "The husband or wife of the defendant, in all criminal actions or proceedings, shall be a competent witness for the defendant, but the failure of such witness to be examined shall not be used to the prejudice of the defense." By virtue of this statute defendant's wife was not a competent witness to testify against him, and her failure to testify for him could not be used to his prejudice.

State v. McCall

In *State v. Porter*, 272 N.C. 463, 158 S.E. 2d 626 (1968), defendant was not represented by counsel. His wife was called by the State as a witness and testified that she saw what happened when defendant allegedly assaulted her sister. No exception was taken to his wife's testimony, but the question was raised on appeal to this Court. Held: "Ordinarily, failure to object in apt time to incompetent testimony will be regarded as a waiver of objection, and its admission is not assignable as error, but this rule is subject to an exception where the introduction or use of the evidence is forbidden by statute as here by the provisions of G.S. 8-57. When the evidence rendered incompetent by statute was admitted, it became the duty of the trial judge to exclude the testimony, and his failure to do so must be held reversible error whether exception was noted or not."

In *State v. Dillahunt*, 244 N.C. 524, 94 S.E. 2d 479 (1956), a State's witness testified without objection that defendant's wife made a statement that shortly before the assault for which her husband was on trial, the prosecuting witness passed her mother's house in a car and her husband followed him. Held: Under the provisions of G.S. 8-57 neither the husband nor the wife is competent to testify against the other, and the prohibition extends to declarations made by one spouse not in the presence of the other. "It is the duty of the presiding judge to exclude such evidence. Objection is not necessary." To like effect is *State v. Warren*, 236 N.C. 358, 72 S.E. 2d 763 (1952).

In *State v. Helms*, 218 N.C. 592, 12 S.E. 2d 243 (1940), the solicitor in his argument to the jury called attention to the fact that defendant's wife had not testified in his behalf. This occurred during the temporary absence of the judge who, upon return to the courtroom, sustained defendant's objection. Near the conclusion of the court's charge to the jury the judge stated that the law did not permit such comment and that the jury should not let the argument influence it. Held: The solicitor's comment violated the statute, C.S. § 1802 (now G.S. 8-57), was prejudicial, and "called for prompt, peremptory and certain caution to the jury, not only that the jury should disregard the argument but that the failure of the wife of defendant to be examined as a witness in his behalf should not be used to the prejudice of defendant. Even then, it may be fairly doubted that the harmful effects of such argument could have been dispelled from the minds of the jury. We are of the opinion, and hold, that merely sustaining the objection is not sufficient caution.

State v. McCall

Nor does the caution later given by the court free the case of the prejudice already done to the rights of defendant."

In *State v. Watson*, 215 N.C. 387, 1 S.E. 2d 886 (1939), the solicitor, over objection, in the course of his argument to the jury commented upon the failure of the defendant to call his wife as a witness. Held: The argument of the solicitor runs counter to the prohibitory provisions of C.S. § 1802 (now G.S. 8-57) and is prejudicial error.

In *State v. Cox*, 150 N.C. 846, 64 S.E. 199 (1909), the State subpoenaed the wife of the defendant together with other witnesses. At trial the State tendered her to the defendant and the solicitor, in his argument to the jury, commented upon the failure of the defendant to corroborate his own testimony by the testimony of his wife. On objection made the court stated that the wife was not competent and would not be allowed to bear witness against her husband; that her testimony would be competent only in behalf of her husband and not against him; and that since she had not testified, the jury could not consider what she knew or did not know. In his charge, the court told the jury "it was not for the State to examine the wife of the defendant as a witness against her husband, but it was competent for the defendant to use her as a witness." Held: The tender of the wife by the State and the comments of the solicitor called attention to the failure of the defense to examine defendant's wife. The judge's neglect to instruct the jury not to consider such failure to use the wife as a witness was prejudicial error.

The provisions of G.S. 8-57, and decisions of this Court interpreting and applying them, impel the conclusion that where evidence is rendered incompetent by statute, it is the duty of the trial judge to exclude it, and his failure to do so is reversible error, whether objection is interposed and exception noted or not. *Hooper v. Hooper*, 165 N.C. 605, 81 S.E. 933 (1914). In such case it is the duty of the judge to act on his own motion. *State v. Porter, supra; State v. Ballard*, 79 N.C. 627 (1878). The rule applies with equal force to the argument of counsel when evidence forbidden by statute is argumentatively placed before the jury and used to the prejudice of the defense. When this occurs it is the duty of the judge *ex mero motu* to intervene and promptly instruct the jury that the wife's failure to testify and the improper argument concerning

that fact must be disregarded and under no circumstances used to the prejudice of the defendant.

For the reasons stated, defendant's first, second and third assignments are well taken and must be sustained. This requires a

New trial.