STATE OF NORTH CAROLINA v. DELMUS RAY THOMPSON

No. COA99-1496

(Filed 16 January 2001)

**1. Appeal and Error— preservation of issues—plea discussions—habitual offender status—introduced by defendant—no objection during cross-examination**

A cocaine defendant waived his right to appellate review of whether the court erred by not acting ex mero motu when the State elicited evidence from defendant about defendant's plea discussions and his habitual offender status by introducing evidence of plea discussions during direct examination and subsequently failing to object to the State's eliciting further evidence during cross-examination.

**2. Appeal and Error— habitual felon status—no objection—no evidence of indictment—review waived**

A cocaine defendant's assignment of error to the court's failure to give a curative instruction after sustaining his objection to the State's question concerning his habitual felon status, even though defendant had not requested an instruction, was not preserved for appellate review under *State v. Robinson*, 74 N.C. App. 323, which held that a curative instruction was necessary because it was the duty of the judge to intervene ex mero motu and instruct the jury that the evidence was incompetent when the evidence was rendered incompetent by statute. N.C.G.S. § 14-7.5, upon which defendant relies here, provides only that the habitual felon indictment shall not be revealed to the jury. The State asked defendant only whether he had been told that he qualified as an habitual offender, no evidence of any indictment of defendant as an habitual offender was introduced, and there was no evidence in the record that defendant was sentenced as an habitual offender.

**3. Appeal and Error; Evidence— plain error review—failure to argue in brief—no prejudice**

A defendant waived plain error review of the admission of plea discussions and his habitual offender status by not raising or arguing the errors as plain errors in his brief. Moreover, even if the assignment of error had been preserved for appeal, any error would have been harmless because defendant admitted the

STATE v. THOMPSON

[141 N.C. App. 698 (2001)]

actions underlying his convictions, then introduced evidence of his plea discussions to support his contention that he did not consider himself guilty. As to his habitual offender status, the court instructed the jury at the beginning of the trial to disregard any question and answer to which an objection was sustained.

**4. Criminal Law— entrapment—selling drugs as favor without profit**

The trial court in a cocaine prosecution did not err by refusing to instruct on entrapment where defendant failed to introduce sufficient evidence of persuasion by either the informant or an officer to suggest that the criminal design originated with the law enforcement agents and not with defendant. Selling drugs as a favor and taking no profit does not entitle a defendant to an instruction on entrapment.

Appeal by defendant from judgments entered 21 July 1999 by Judge Carl L. Tilghman in Pitt County Superior Court. Heard in the Court of Appeals 19 October 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General M. A. Kelly Chambers, for the State.*

*Paul Pooley for defendant-appellant.*

McGEE, Judge.

Defendant appeals two convictions for possession of cocaine with intent to sell and deliver and two convictions for sale and delivery of cocaine. Defendant assigns as error the trial court's failure to take adequate action when defendant was questioned by the State about his plea discussions and his habitual offender status, and the trial court's refusal to instruct the jury on entrapment. We find no error.

Evidence for the State at trial tended to show that the Pitt County Sheriff's Office received information in November 1998 from a confidential informant that defendant was selling narcotics from his apartment. To ascertain the validity of the informant's information, the sheriff's office arranged and observed a purchase of cocaine on 19 November 1998 by the informant from defendant. The informant then introduced undercover narcotics detective Scott O'Neil (O'Neil) to defendant on 1 December 1998, and O'Neil purchased cocaine from defendant. O'Neil returned alone to defendant's apartment and again

purchased cocaine on 4 December 1998. O'Neil then told defendant that the sheriff's officers had two undercover buys from defendant, and defendant agreed to make a purchase from his supplier in return for the officers' promise to talk to the district attorney and judge on his behalf.

Defendant was charged with the 1 December and 4 December 1998 drug purchases. Carter Adkins (Adkins), the officer in charge of the investigation, acknowledged on cross-examination that the sheriff's office was principally interested in defendant's supplier, a neighbor of defendant, and that the informant told the sheriff's officers they had to go through defendant to get to the supplier. Adkins also acknowledged that, from what he saw, defendant was selling drugs to get drugs for his personal use, not for monetary gain.

Defendant testified in his own behalf that he was a heroin addict but was undergoing treatment, and that although he had an extensive criminal history due to his efforts to get money for drugs, he had no convictions for drug dealing. He knew the informant because he and the informant had been "in rehab together" and had once been in jail together. When the informant came to defendant's apartment and asked to buy cocaine, defendant told him he could not help because he used heroin only. The informant told defendant that defendant had a neighbor upstairs who sold cocaine. Defendant promised to check on the neighbor for the informant, and defendant then purchased cocaine from the neighbor for the informant. Defendant stated that he had never before gotten cocaine from anyone for the informant, and that he had not known the supplier was a drug dealer until the informant told him.

Defendant testified that on 1 December 1998, the informant called him and said he wanted to buy some cocaine, and that he was going to bring someone with him. Defendant told the informant that he did not do that any more, that he was trying to get his act together, that he had gotten medication and was trying to get help. The informant asked defendant to make a buy for him one more time. A few minutes later the informant and O'Neil knocked on defendant's door. The informant put the money in defendant's hand, and defendant told the informant and O'Neil to stay there, he would be back. Defendant then went upstairs and purchased cocaine from the supplier. Defendant stated that he first had to yell his name through the door, because the supplier would not sell to anyone he did not know. Defendant described knocking on the supplier's door, sticking his hand in with

the money, and receiving into his hand the appropriate amount of cocaine, all without seeing the supplier.

Defendant testified that on 4 December 1998, O'Neil called him and asked to buy cocaine, telling defendant that he had gotten his number from the informant. Defendant, not wanting to speak on the telephone, told O'Neil to come by, that he would see what he could do. O'Neil knocked on the door, asked to buy cocaine, and gave defendant money. Defendant then went upstairs and returned with the cocaine.

Defendant testified that he sold the cocaine only as a favor to the informant because the informant had not known that defendant was in rehab, and because the supplier would not have sold directly to the informant. Defendant stated that he had been convicted for possession of drugs in the past and had pleaded guilty then because he had been guilty, but he believed he was not guilty this time. He declared that he had refused the State's offer of a seventeen month sentence and would refuse an offer of twelve months as well, knowing that he risked seven years if found guilty at trial.

Defendant admitted on cross-examination that he gave drugs to O'Neil, and that he knew what he did was wrong. He acknowledged that, although the officer had promised to help him get probation, his criminal record was too extensive to permit probation under the law, in part due to a history of thefts in support of his heroin habit. Defendant also acknowledged several convictions in the past for possession of cocaine but insisted that he had merely possessed cocaine on prior occasions to trade it for heroin.

Defendant testified on redirect examination that he only remembered four felony convictions on his criminal record. The State asked on recross-examination:

Q. Delmus, they told you that you qualified as a habitual offender?

A. Right.

Q. You do, don't you?

MR. JONES: Your Honor, I object.

The trial court sustained the objection.

STATE v. THOMPSON

[141 N.C. App. 698 (2001)]

## I.

[1] Defendant first assigns error to the trial court permitting the State to elicit evidence from defendant about his plea discussions and his habitual offender status. Defendant acknowledges that he did not object to the alleged errors at trial but asserts that the errors were nonetheless preserved for appeal.

> "It is well settled that with the exception of evidence precluded by statute in furtherance of public policy . . . the failure to object to the introduction of the evidence is a waiver of the right to do so, and its admission, even if incompetent is not a proper basis for appeal."

*State v. Hunter*, 297 N.C. 272, 278-79, 254 S.E.2d 521, 525 (1979) (citation omitted). Defendant must therefore demonstrate that the trial court erred in introducing evidence precluded by statute before we may consider his assignments of error on appeal.

### A.

Defendant asserts that the State's introduction of evidence of defendant's plea discussions during the cross-examination of defendant was in violation of N.C. Gen. Stat. § 8C-1, Rule 410 and N.C. Gen. Stat. § 15A-1025, and was therefore reversible error despite defendant's failure to object to the State's questions. As our Supreme Court has held, "where evidence is rendered incompetent by statute, it is the duty of the trial judge to exclude it, and his failure to do so is reversible error, whether objection is interposed and exception noted or not." *State v. McCall*, 289 N.C. 570, 577, 223 S.E.2d 334, 338 (1976) (citation omitted).

In *McCall*, our Supreme Court considered a statute which provided that the defendant's spouse would be a competent witness for the defense, but that the defendant's failure to examine his spouse as a witness could not be used to prejudice the defendant. The defendant in *McCall* testified on his own behalf but his wife did not. The State asked the defendant questions concerning whether he knew his wife could not testify against him and then commented in its closing argument to the jury on the defendant's wife's failure to testify. The Supreme Court held that, even though the defendant did not object during trial, the trial court was obliged to act *ex mero motu* to correct the error.

N.C. Gen. Stat. § 8C-1, Rule 410 (1999) provides that evidence of statements made in the course of plea discussions between

the defendant and the State are inadmissible for or against the defendant.

> However, such a statement is admissible in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it.

*Id.* Evidence of plea discussions in the present case was first introduced by defendant during his direct examination, when he described a plea offer by the State of seventeen months imprisonment and stated that he would not even have taken twelve months had it been offered. The State's subsequent questions during cross-examination concerning the plea discussions were in part an effort to explain why the State had been unable to offer defendant a plea bargain with a probationary sentence. Whether the evidence elicited by the State's questions was admissible under Rule 410 for the purposes of fairness was a determination for the trial court, and hence the evidence was not incompetent as a matter of law. The trial court had no duty to act *ex mero motu* under *McCall* and defendant's assignment of error under Rule 410 is not preserved for appeal.

N.C. Gen. Stat. § 15A-1025 (1999) does not include Rule 410's exception. It states, in its entirety:

> The fact that the defendant or his counsel and the prosecutor engaged in plea discussions or made a plea arrangement may not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings.

N.C. Gen. Stat. § 15A-1025 would appear to render incompetent all evidence elicited from defendant about his plea discussions, whether introduced by defendant or by the State, and preserve under *McCall* defendant's assignment of error despite defendant's failure to object. In understanding the apparent conflict between N.C. Gen. Stat. § 8C-1, Rule 410, enacted in 1983, and N.C. Gen. Stat. § 15A-1025, last amended in 1975, we note that the commentary to the later Rule 410 concludes with the statement, "North Carolina practice in this area is governed in part by G.S. 15A-1025 which is consistent with this rule. G.S. 15A-1025 should be amended after Rule 410 is adopted." N.C. Gen. Stat. § 8C-1, Rule 410, Commentary (1999).

However, we need not determine whether the trial court erred under N.C. Gen. Stat. § 15A-1025 by failing to act *ex mero motu*, because we hold that defendant waived appellate review of the issue

under *State v. Flowers*, 347 N.C. 1, 24, 489 S.E.2d 391, 404-05 (1997), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d. 150 (1998). In *Flowers*, the defendant assigned error to the trial court's admission of a transcript of the defendant's testimony at a prior trial, arguing that portions of the transcript dealing with plea discussions should have been redacted under N.C. Gen. Stat. § 15A-1025. Our Supreme Court held that the defendant waived appellate review when, after the trial court asked the defendant to bring to the court's attention any specific objections regarding any portion of the transcript, the defendant neither objected nor requested any portion of the transcript be omitted. We hold that, in the present case, defendant similarly waived his right to appellate review by introducing evidence during his own direct examination of plea discussions and subsequently failing to object to the State's eliciting of further evidence during cross-examination.

B.

**[2]** Defendant asserts that the State's introduction of evidence of defendant's habitual felon status during his recross-examination violated N.C. Gen. Stat. § 14-7.5, and that the trial court's failure to give a curative instruction to the jury after sustaining defendant's objection was reversible error despite the failure of defendant to request such an instruction. Applying *McCall* to the State's closing argument in *State v. Robinson*, 74 N.C. App. 323, 328 S.E.2d 309 (1985), our Court held that the trial court's sustaining of the defendant's objection alone was inadequate to remedy the State's improper reference to the defendant's wife's failure to testify. We held that a curative instruction was necessary because, when evidence is rendered incompetent by statute, " 'it is the duty of the judge *ex mero motu* to intervene *and promptly instruct the jury* ' " that the evidence is incompetent. *Id.* at 325, 328 S.E.2d at 311 (quoting *State v. Thompson*, 290 N.C. 431, 226 S.E.2d 487 (1976)) (emphasis added).

However, N.C. Gen. Stat. § 14-7.5 (1999), upon which defendant relies in asserting the evidentiary incompetence of defendant's habitual felon status, provides only that "[t]he indictment that the person is an habitual felon shall not be revealed to the jury[.]" No evidence of any indictment of defendant as an habitual felon was introduced, nor is there any evidence in the record that defendant was indicted or sentenced as an habitual felon. Instead, the State asked defendant only whether he had been told that he qualified as an "habitual offender." *See, e.g., State v. Aldridge*, 67 N.C. App. 655, 659, 314 S.E.2d 139, 142 (1984) (holding that cross-examination of a defendant which disclosed prior felonies, but did not disclose an indictment as

an habitual felon, did not violate N.C. Gen. Stat. § 14-7.5). We hold that the State's question was not prohibited under N.C. Gen. Stat. § 14-7.5, and therefore that defendant's assignment of error was not preserved for appellate review under *McCall* and *Robinson. Cf. State v. Lewis*, 32 N.C. App. 298, 300, 231 S.E.2d 693, 694 (1977) (narrowly interpreting N.C. Gen. Stat. § 15A-1025 to apply only to plea discussions with prosecutors, not with police officers).

## C.

**[3]** Defendant's assignment of error in the record on appeal to the admission of evidence of plea discussions and his habitual offender status concludes: "Alternatively, defendant assigns these errors as plain error." However, defendant does not raise or argue the errors as plain error in his brief. We therefore deem defendant to have waived any assignment of plain error. *See* N.C.R. App. P., Rule 28(a); *State v. Stanley*, 288 N.C. 19, 26, 215 S.E.2d 589, 593-94 (1975) ("[I]t is well recognized that assignments of error not set out in an appellant's brief, and in support of which no arguments are stated or authority cited, will be deemed abandoned.").

However, even had defendant's assignment of error been preserved for appeal, any error would have been harmless. Under N.C. Gen. Stat. § 15A-1443 (1999), a prejudicial error is one for which, but for its occurrence, there is a reasonable possibility that a different result would have been reached at trial. Defendant admitted to the actions underlying the crimes for which he was convicted, then introduced evidence of his plea discussions to support his contention that he did not consider himself guilty of the crimes with which he was charged, presumably an effort to indicate his lack of criminal intent. Had the trial court excluded that testimony of plea discussions, defendant's likelihood of being convicted would only have *increased.*

As to defendant's habitual offender status, the trial court had instructed the jury at the beginning of the trial to disregard any question and any answer thereto to which an objection was sustained; defendant was asked about his habitual offender status only after he had already been questioned extensively about his prior felonies; and defendant's objection was sustained. In light of the overwhelming evidence presented to the trial court of defendant's guilt, we see no reasonable possibility that an additional curative instruction following defendant's objection would have led the jury to a different result.

II.

**[4]** Defendant's other assignment of error is to the trial court's refusal to instruct the jury on the defense of entrapment, a claim by a defendant that, although he committed the acts underlying a crime, the intent to commit the crime came not from him but from a law enforcement agent. *See State v. Neville*, 302 N.C. 623, 626, 276 S.E.2d 373, 375 (1981).

> Entrapment is the inducement of a person to commit a criminal offense not contemplated by that person, for the mere purpose of instituting a criminal action against him. To establish the defense of entrapment, it must be shown that (1) law enforcement officers or their agents engaged in acts of persuasion, trickery or fraud to induce the defendant to commit a crime, and (2) the criminal design originated in the minds of those officials, rather than with the defendant. The defense is not available to a defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials. The defendant has the burden of proving entrapment to the satisfaction of the jury.

*State v. Davis*, 126 N.C. App. 415, 417-18, 485 S.E.2d 329, 331 (1997) (citations omitted). However, a defendant must first present credible evidence tending to support a defense of entrapment before a trial court may submit the question to a jury. *See State v. Walker*, 295 N.C. 510, 513, 246 S.E.2d 748, 749-50 (1978).

Our Court has held that a defendant introduced sufficient evidence of inducement to justify a jury instruction on entrapment where the defendant's testimony tended to show that the defendant had sold drugs to an undercover officer: because the defendant was in need of a job and believed that the officer had promised him one in *State v. Blackwell*, 67 N.C. App. 432, 313 S.E.2d 797 (1984); only after the officer and his informant initiated the conversation about drugs, the officer repeatedly urged the defendant to provide the drugs, the informant located a person who would sell the drugs and drove the officer and the defendant to the location, and the officer then provided the defendant the money to buy the drugs in *State v. Jamerson*, 64 N.C. App. 301, 307 S.E.2d 436 (1983); only after the undercover officer had already provided the defendant with gifts of beer, food, cigarettes, and money to fix her car and leaky basement, first raised the subject of a drug purchase, drove the defendant to each of the drug purchase locations, and provided the defendant with money to

buy the drugs in *State v. Grier*, 51 N.C. App. 209, 275 S.E.2d 560 (1981).

We find no similar evidence of inducement by law enforcement officers in defendant's testimony in the present case. Neither the informant nor O'Neil provided gifts or made promises before asking to purchase cocaine from defendant. Also, although defendant testified that he had been reluctant to sell cocaine to the informant and O'Neil, his own testimony showed defendant required little urging before acquiescing to their requests. "That [the undercover officer] gave defendant the money and asked him to obtain the cocaine is not evidence of inducement, just an opportunity to commit the offense." *State v. Martin*, 77 N.C. App. 61, 67, 334 S.E.2d 459, 463 (1985), *cert. denied*, 317 N.C. 711, 347 S.E.2d 47 (1986). As we held in *Martin*, selling drugs as a favor and taking no profit from the transaction does not entitle a defendant to an instruction on entrapment. *See also State v. Booker*, 33 N.C. App. 223, 234 S.E.2d 417 (1977). Defendant failed to introduce sufficient evidence of persuasion by either the informant or O'Neil to suggest that the criminal design originated with the law enforcement agents and not with defendant. The trial court did not err in refusing to instruct the jury on entrapment.

No error.

Judges WALKER and HORTON concur.