NO. COA13-1430

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

STATE OF NORTH CAROLINA

   v.                       Wake County

                                Nos. 12 CRS 5861, 11750, 213646

ANTWON TERRELL ROGERS

Appeal by Defendant from judgment entered 26 April 2013 by Judge Carl R. Fox in Wake County Superior Court. Heard in the Court of Appeals 13 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General John R. Green, Jr., for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Hannah Hall, for Defendant.*

STEPHENS, Judge.

On 18 June 2012, Defendant Antwon Terrell Rogers was under surveillance by a team from the "career criminal unit" of the Raleigh Police Department ("RPD"), which was seeking to serve Defendant with an outstanding warrant and a grand jury indictment for having attained the status of an habitual felon. The surveillance team did not know where Defendant lived, but saw Defendant drive up to and then enter a house at 312 North

King Charles Drive in Raleigh.  A woman, later identified as Defendant's girlfriend, Felisha Sandifer,[1] was a passenger in the car and entered the house with Defendant.

About ten officers with the career criminal unit surrounded the house, and several officers knocked on the door.  A woman answered the door and stated that she lived in the home.  When the officers told her they were looking for Defendant, the woman called Defendant to come outside.  The officers handcuffed and arrested Defendant without incident.

After receiving consent from the homeowner, officers conducted a search which revealed a purse on the kitchen table. The purse contained mail addressed to Sandifer, marijuana, and a clip loaded with twelve .40 caliber bullets.  When confronted by the officers, Sandifer initially claimed the marijuana and clip both belonged to her, but then admitted that the clip belonged to Defendant.  At trial, Sandifer testified that Defendant put the clip in her purse when the police arrived at the house. Sandifer gave the officers permission to search her car, and a handgun was discovered under the passenger seat.  The gun, which bore a stamp reading "Detroit Police Department," matched the

---

[1] Sandifer apparently went by the name "Felisha Requer" in June 2012, but used the last name Sandifer at trial.

clip found in Sandifer's purse. Sandifer denied having a gun and stated that it must have belonged to Defendant. Officers later determined that the gun was stolen. While Defendant was being held in jail after his arrest, he made several phone calls to Sandifer and asked her to take responsibility for the gun.

On 23 July 2012, Defendant was indicted on charges of possession of a firearm by a felon and possession of a stolen firearm. On 11 December 2012, Defendant was indicted for having attained the status of an habitual felon. At the 22 April 2013 session of superior court in Wake County, a jury found Defendant not guilty of possession of a stolen firearm, but guilty of possession of a firearm by a convicted felon. In a separate proceeding, the jury found that Defendant was an habitual felon. The trial court imposed an active sentence of 93-124 months in prison, from which Defendant gave notice of appeal in open court.

On 28 March 2014, Defendant filed a motion for appropriate relief ("MAR") in this Court contemporaneously with his appellate brief. The MAR was referred to this panel by order entered 8 April 2014. In his MAR, Defendant contends that his prior record level for sentencing was improperly calculated.

Because we grant Defendant a new trial, we dismiss his MAR as moot.

*Discussion*

On appeal, Defendant argues that the trial court (1) erred in failing to instruct the jury to disregard evidence about his habitual felon indictment when such evidence was elicited during Defendant's trial on the underlying charges, (2) abused its discretion in denying his motion for a mistrial, (3) violated his Sixth Amendment rights by allowing Defendant's trial counsel to make the final decision regarding cross-examination of a witness, and (4) erred in making an inadequate inquiry regarding Defendant's request for substitute counsel. We conclude that Defendant is entitled to a new trial.

Defendant argues that, during the trial on the principal charges against him, the trial court erred by failing to intervene and instruct the jury to disregard evidence of Defendant's habitual felon indictment. We agree.

Our General Statutes provide that, when a defendant faces trial for having attained the status of an habitual felon, the "indictment that the person is an habitual felon *shall not be*

*revealed* to the jury unless the jury shall find that the defendant is guilty of the principal felony or other felony with which he is charged." N.C. Gen. Stat. § 14-7.5 (2013) (emphasis added). In other words, "[t]he trial for the substantive felony is held first, and only after [a] defendant is convicted of the substantive felony is the habitual felon indictment revealed to and considered by the jury." *State v. Cheek*, 339 N.C. 725, 729, 453 S.E.2d 862, 864 (1995) (citation omitted). This procedural division between the trial on the underlying felonies and the trial on the habitual felon indictment

> avoids possible prejudice to the defendant and confusion by the jury considering the principal felony with issues not pertinent to guilt or innocence of such offense, notably the existence of the prior convictions necessary for classification as an habitual felon, and further precludes the jury from contemplating what punishment might be imposed were [the] defendant convicted of the principal felony and subsequently adjudicated an habitual felon.

*State v. Wilson*, 139 N.C. App. 544, 548, 533 S.E.2d 865, 868-69 (citation omitted), *disc. review denied and appeal dismissed*, 353 N.C. 279, 546 S.E.2d 394 (2000).

This Court has held that, where the State introduces evidence of a defendant's pending habitual felon indictment in violation of section 14-7.5, even after sustaining an objection

by the defendant, "a curative instruction [i]s necessary because, when evidence is rendered incompetent by statute, it is the duty of the judge *ex mero motu* to intervene and *promptly instruct the jury* that the evidence is incompetent." *State v. Thompson*, 141 N.C. App. 698, 704, 543 S.E.2d 160, 164 (citation and internal quotation marks omitted; emphasis in original), *disc. review denied*, 353 N.C. 396, 548 S.E.2d 157 (2001). Further, "where evidence is rendered incompetent by statute, it is the duty of the trial judge to exclude it, and his failure to do so is reversible error[,]" whether or not the defendant objects to the evidence. *State v. McCall*, 289 N.C. 570, 577, 223 S.E.2d 334, 338 (1976) (citation omitted).

Here, during the direct examination of RPD Officer Derrick Jack, one of the officers involved in Defendant's surveillance and arrest, the following exchange took place:

> [OFFICER JACK]:    I was attempting to go serve a pair of outstanding warrants on [Defendant].    He actually had one outstnading [sic] warrant and an outstanding grand jury indictment for a habitual.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT:        Sustained.

While acknowledging that the quick objection of defense counsel and the proper sustaining of that objection by the trial court

prevented the witness from uttering the word "felon," Defendant contends that "the jury could fill in the blank" based on Officer Jack's earlier testimony about his job on the career criminal unit: "We're a unit that's [sic] our purpose is to seek out repeat offenders, repeat felon offenders. Generally they are subject eligible [sic] for the North Carolina habitual felon to kind of a third-strike type law." However, as Defendant also notes, defense counsel objected to and moved to strike this testimony. The trial court sustained the objection and instructed the jury, "Disregard that last statement." "The law presumes that jurors follow the court's instructions." *State v. Tirado*, 358 N.C. 551, 581, 599 S.E.2d 515, 535 (2004) (citation omitted), *cert. denied*, *sub nom. Queen v. North Carolina*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005). However, if the jurors here disregarded only Officer Jack's "last statement[,]" as directed by the trial court, they were still made aware that his work involved "repeat offenders, repeat felon offenders."

Despite the fact that Officer Jack's challenged testimony was interrupted and stopped before he added "felon" after "habitual," we believe Officer Jack's testimony that Defendant had "an outstanding grand jury indictment for a habitual" did

require striking and a curative instruction from the trial court. We agree with Defendant that the jury would have been able to "fill in the blank" and conclude that Defendant was facing "an outstanding grand jury indictment for [being an] habitual" felon, criminal, offender, or some other synonymous term. Any of those words used to complete Officer Jack's description of the "outstanding grand jury indictment" would have subjected Defendant to the harms contemplated in *Wilson*, to wit, "possible prejudice to the defendant and confusion by the jury considering the principal felony with issues not pertinent to guilt or innocence of such offense[.]" 139 N.C. App. at 548, 533 S.E.2d at 868-69.

As this Court noted in *Thompson*, section 14-7.5 bars revelation to the jury of the *pending indictment* that the defendant is an habitual felon. 141 N.C. App. at 704, 543 S.E.2d at 164 (citation omitted). Thus, in that case, we found no error because

> [n]o evidence of any *indictment* of [the] defendant as an habitual felon was introduced, nor [wa]s there any evidence in the record that [the] defendant was *indicted* or sentenced as an habitual felon. Instead, the State asked [the] defendant only whether he had been told that he qualified as an "habitual offender." *See, e.g., State v. Aldridge*, 67 N.C. App. 655, 659, 314 S.E.2d 139, 142 (1984) (holding that cross-

> examination of a defendant which disclosed prior felonies, but did not disclose an *indictment* as an habitual felon, did not violate N.C. Gen. Stat. § 14-7.5).

*Id.* at 704-05, 543 S.E.2d at 164-65 (emphasis added); *see also State v. Owens*, 160 N.C. App. 494, 586 S.E.2d 519 (2003) (holding that section 14-7.5 was not violated where the State cross-examined the defendant about a prior conviction for being an habitual felon, because the State's questions did not refer to a *pending habitual felon indictment* against the defendant, but instead simply served to elicit information on the defendant's criminal record). This reasoning led to the grant of a new trial for a defendant in a recent unpublished opinion from this Court in which the State elicited testimony from a defendant about his pending habitual felon indictment:

> Q. And before you left, you said, "Carla, you don't have any felonies"?
>
> A. No, I did not.
>
> Q. You told her this is going to be your fourth felony. You're a habitual felon?
>
> A. No, I did not.
>
> Q. Well, you know, in fact, that you are, correct?
>
> A. You indict me on habitual.
>
> Q. Is that a "yes"?

A.  "Yes."

*State v. Eaton*, __ N.C. App. __, 722 S.E.2d 797 (2012) (unpublished opinion), *available at* 2012 N.C. App. LEXIS 372, at *11-12, *disc. review denied*, 366 N.C. 568, 738 S.E.2d 371 (2013).  Just as here, in *Eaton* the entire phrase "pending indictment for being an habitual felon" was never used. However, the questions in context had the effect of revealing to the jury that the defendant indeed faced such an indictment, and as a result, we held that admission of such evidence was prejudicial error requiring a new trial.  *Id.*  We discern no meaningful distinction between the phrases "You indict me on habitual" and "an outstanding grand jury indictment for a habitual" and believe that both alert the jury to a defendant's pending habitual felon indictment.

In light of our case law and the intent behind section 14-7.5, we conclude that, in addition to sustaining the objection by defense counsel, the trial court was required to give a curative instruction regarding Officer Jack's reference to "an outstanding grand jury indictment for a habitual."  The trial court's failure to give such an instruction was reversible error and Defendant is entitled to a new trial.  Given our resolution

of this issue, we need not address Defendant's remaining arguments or the issue raised in his MAR.

NEW TRIAL.

Judges CALABRIA and ELMORE concur.