IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-435

Filed: 3 March 2020

Onslow County, No. 15-CRS-54613

STATE OF NORTH CAROLINA,

v.

CHARLES EDGAR PRATT, Defendant.

Appeal by Defendant from judgments entered 2 May 2018 and 4 May 2018 by Judge Charles H. Henry in Onslow County Superior Court. Heard in the Court of Appeals 22 January 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Matthew L. Liles, for the State.*
>
> *Ward, Smith & Norris, P.A., by Kirby H. Smith, III, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Charles Edgar Pratt appeals from: (1) the 2 May 2018 criminal judgment entered upon his convictions for (a) trafficking in opium by transport, (b) trafficking in opium by possession, and (c) possession with intent to sell and/or deliver methadone; and (2) the 4 May 2018 civil judgment ordering that Defendant pay attorney's fees in connection with his defense. Defendant contends that the trial court erred by: (1) entering the criminal judgment after denying Defendant's request that the trial court instruct the jury on the affirmative defense of entrapment; and

(2) entering the civil judgment without giving Defendant notice and an opportunity to be heard on the attorney's fees.  We affirm in part and vacate and remand in part.

## I.    Background

Defendant was arrested on 7 August 2015 by the Onslow County Sheriff's Office on suspicion of drug trafficking.  On 14 February 2017, Defendant was indicted by an Onslow County grand jury on the following charges: (1) trafficking in more than four but less than 14 grams of opium by manufacturing, in violation of N.C. Gen. Stat. § 90-95(h)(4); (2) trafficking in more than four but less than 14 grams of opium by transport, in violation of N.C. Gen. Stat. § 90-95(h)(4); (3) trafficking in more than four but less than 14 grams of opium by possession, in violation of N.C. Gen. Stat. § 90-95(h)(4); and (4) possession with intent to sell and deliver methadone, in violation of N.C. Gen. Stat. § 90-95(a)(1).  Defendant pled not guilty on all counts, and gave notice that he would seek to assert the affirmative defense of entrapment.

The matter came on for trial on 30 April 2018.  At the close of State's evidence, Defendant moved to dismiss the trafficking by manufacturing count, which the State joined and the trial court allowed.  At the charge conference, Defendant requested that the jury be instructed on entrapment, and the State objected.  The trial court denied Defendant's request, stating that Defendant "failed to show that he was not otherwise willing to" commit the crimes with which he was charged.

On 2 May 2018, Defendant was convicted on the trafficking by transport, trafficking by possession, and possession with intent to sell and/or[1] deliver counts. The trial court entered judgment upon the convictions the same day, and sentenced Defendant to 70 to 93 months' imprisonment. The trial court also imposed court costs and fines of $51,072.50 and stated that Defendant would be required to reimburse the State for the costs of his defense "in an amount to be determined[,]" which the trial court ordered Defendant's trial counsel to calculate and submit an application for the next day. Defendant gave notice of appeal in open court.

Defendant's trial counsel filed a fee application with the trial court later that day, and on 4 May 2018, the trial court entered a civil judgment against Defendant for $3,300 of attorney's fees.

## II. Appellate Jurisdiction

Defendant's oral notice of appeal in open court was sufficient to invoke this Court's jurisdiction to review the criminal judgment entered against him. N.C. Gen. Stat. § 7A-27(b)(1) (2018); N.C. R. App. P. 4(a)(1).

---

[1] Although Defendant was indicted for "possess[ion] with the intent to sell *and* deliver" methadone, and was thereafter convicted of "POSSESSION WITH INTENT TO SELL *AND/OR* DELIVER METHADONE" (emphases added), this Court has said that such convictions are proper. *See State v. Mercer*, 89 N.C. App. 714, 715-16, 367 S.E.2d 9, 10-11 (1988) ("It is proper for a jury to return a verdict of possession with intent to sell *or* deliver under [N.C. Gen. Stat. §] 90-95(a)(1). Such a verdict is no less proper when the indictment charges possession with intent to sell *and* deliver since the conjunctive 'and' is acceptable to specify the exact bases for the charge." (citations omitted)).

Defendant did not file a written notice of appeal from the civil judgment against him. However, Defendant has filed a petition for a writ of certiorari with this Court asking that we review the civil judgment, and we exercise our authority under North Carolina Rule of Appellate Procedure 21 to grant Defendant's petition and review that judgment as well.[2]

## III. Discussion

Defendant contends that the trial court erred by (1) denying Defendant's request for an entrapment instruction and (2) entering the civil judgment without giving Defendant an opportunity to be heard on the attorney's fees. We address each argument in turn.

### A. Criminal Judgment/Entrapment Instruction

Our Supreme Court has said:

> Whether the defendant was entitled to have the defense of entrapment submitted to the jury is to be determined by the evidence. Before a Trial Court can submit such a defense to the jury there must be some credible evidence tending to support the defendant's contention that he was a victim of entrapment, as that term is known to the law.
>
> The defense of entrapment consists of two elements:
>
> > (1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime[; and]

---

[2] The State filed a motion to dismiss Defendant's appeal from the civil judgment based upon Defendant's failure to timely file written notice appeal therefrom. Because we grant Defendant's petition for a writ of certiorari and will review the civil judgment, we deny the State's motion to dismiss.

(2) [that] the criminal design originated in the minds of the government officials, rather than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities.

In the absence of evidence tending to show *both* inducement by government agents *and* that the intention to commit the crime originated not in the mind of the defendant, but with the law enforcement officers, the question of entrapment has not been sufficiently raised to permit its submission to the jury.

*State v. Walker*, 295 N.C. 510, 513, 246 S.E.2d 748, 749-50 (1978) (internal quotation marks and citations omitted).

While the burden is on the defendant to "first present credible evidence tending to support a defense of entrapment before a trial court may submit the question to a jury[,]" *State v. Thompson*, 141 N.C. App. 698, 706, 543 S.E.2d 160, 165 (2001), where "the State's own evidence raises an inference of entrapment . . . the submission of the defense is obviously proper[.]" *State v. Neville*, 302 N.C. 623, 626, 276 S.E.2d 373, 375 (1981). "If defendant's evidence creates an issue of fact as to entrapment, then the jury *must* be instructed on the defense of entrapment." *State v. Branham*, 153 N.C. App. 91, 100, 569 S.E.2d 24, 29 (2002) (emphasis added). "Whether the evidence, taken in the light most favorable to the defendant, is sufficient to require the trial court to instruct on a defense of entrapment is an issue of law that is determined by

an appellate court de novo." *State v. Ott*, 236 N.C. App. 648, 651, 763 S.E.2d 530, 532 (2014).

When viewed in the light most favorable to Defendant, the record contains credible evidence tending to show that Defendant was persuaded by Jason Ford, a confidential informant working with the Onslow County Sheriff's Office, to commit the crimes for which Defendant was tried and convicted. The State conceded at the charge conference that Ford acted as a confidential informant for the State and, as discussed more fully below, Defendant testified that Ford encouraged Defendant to obtain methadone and exchange it for assistance with repairing the roof of Defendant's house. Accordingly, we conclude that Defendant met his burden of showing the first element of entrapment, i.e., "acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime[.]" *Walker*, 295 N.C. at 513, 246 S.E2d at 749-50.

However, our Supreme Court has made clear that a showing of such persuasion is insufficient standing alone to entitle a defendant to an entrapment instruction:

> The defense of entrapment is available when there are acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime *and when the origin of the criminal intent lies with the law enforcement agencies. We note that this is a two step test and a showing of trickery, fraud or deception by law enforcement officers alone will not support a claim of entrapment. The defendant must show that the*

> *trickery, fraud or deception was practiced upon one who entertained no prior criminal intent.*

*State v. Hageman*, 307 N.C. 1, 28, 296 S.E.2d 433, 449 (1982) (emphasis added) (internal quotation marks and citations omitted). Put another way, "[t]he defense is not available to a defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials." *Thompson*, 141 N.C. App. at 706, 543 S.E.2d at 165. "Predisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant an opportunity to commit the crime." *Hageman*, 307 N.C.at 31, 296 S.E.2d at 450.

Defendant's own testimony establishes that: (1) the criminal opportunity—that Defendant would obtain methadone and exchange it for assistance repairing the roof of his house—originated with a third party who is not alleged to have been working for or affiliated with the State; (2) Defendant told Ford about the opportunity; and (3) Ford thereafter encouraged Defendant to take advantage of the opportunity and offered to help facilitate.

At trial, Defendant testified as follows:

> Q. Go back to where it all started, and tell the Court about that.
> A. Month earlier, I had an opportunity -- well, messed up opportunity -- but **I had an opportunity through a buddy of my nephew's to do some work for some methadones**.
> Q. And when you say "to do some work for some

methadones," are you saying that you were going to do work for methadones, or someone else was?
A. Someone else was.
Q. Okay. And what was the work?
A. Frame my roof in, and do my roof.

Soon thereafter, during a colloquy with the trial court, Defendant said that "Mr. Ford is my buddy, or was my friend[,]" and not merely a "buddy of [Defendant's] nephew's."

And regarding Ford's involvement in the drugs-for-work "opportunity[,]" Defendant testified as follows:

Q. Okay. Was Mr. Pratt -- or, sorry -- was Mr. Ford aware of this?
A. He should have been. He -- he did -- yes, he was.
Q. All right. Did you and Mr. Ford ever have conversations about getting the roof done if you paid the methodones [sic] --
A. Yeah.
Q. -- or words to that effect?
A. **He offered to help me, five methadones, telling me that it would be a good deal. He'd have his -- some of his -- he'd ask some of his friends to get some methadones and everything, and he'd help me get the amount that I needed so I could do that roof.**

Defendant's own testimony therefore indicates that it was an unidentified third party—a "buddy of [Defendant's] nephew's[,]" rather than Ford, who Defendant testified was his own friend—who proposed the drugs-for-work "opportunity" that was the genesis of the drug deal that ultimately led to Defendant's convictions, and

that Ford merely "offered to help" facilitate the "opportunity" and opined that it was "a good deal[.]"

Our Supreme Court has made clear that a law-enforcement officer or agent does not entrap a defendant by offering to help facilitate a criminal scheme that the defendant already has in place. *See Hageman*, 307 N.C. at 29-30, 296 S.E.2d at 449 ("It is well settled that the defense of entrapment is not available to a defendant who has a predisposition to commit the crime independent of governmental inducement and influence. The fact that governmental officials merely afford opportunities or facilities for the commission of the offense is, standing alone, not enough to give rise to the defense of entrapment."). Indeed, the Court has stated that the second element of entrapment is concerned with whether "the crime is the product of the creative activity of the law enforcement authorities." *Walker*, 295 N.C. at 513, 246 S.E.2d at 750; *see also Hageman*, 307 N.C. at 28, 296 S.E.2d at 449 (entrapment defense only available "when the origin of the criminal intent lies with the law enforcement agencies"). As the criminal scheme in this case originated between Defendant and a third party, and the State's agent merely offered to assist in seeing that scheme realized, the crime was not the product of the creative activity of law enforcement.

Defendant urges in his brief on appeal that "it was Jason Ford's idea for [Defendant] to use methadone to pay for his roof being repaired[,]" because Ford "offered to help [Defendant] fix his roof in exchange for 'five methadones.'" But

Defendant's position both lacks evidentiary support and contradicts his position below. First, Defendant's testimony that Ford "offered to help" him to take advantage of the "opportunity" to have his nephew's friend fix his roof negates the idea that Ford came up with the criminal scheme; plainly, one offers to "help" with a task that has already been conceived. And second, Defendant's characterization impermissibly contradicts his trial counsel's arguments at the charge conference that the drugs-for-work "opportunity" did not originate with Ford, who "heard this idea from someone else."[3] *See Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("the law does not permit parties to swap horses between courts in order to get a better mount").

Accordingly, the record demonstrates that Ford "merely afford[ed] the defendant an opportunity to commit the crime[s,]" which Defendant was predisposed to commit. *Hageman*, 307 N.C. at 31, 296 S.E.2d at 450. Our conclusion that Defendant was predisposed to commit the trafficking and possession offenses is buttressed by Defendant's testimony that he (1) sold Ford methadone one month prior to his arrest in this case and (2) set up the drug deal that led to his arrest entirely independently of Ford or any other agent of the State.

Because, in the light most favorable to Defendant, the record demonstrates that (1) neither the drugs-for-work "opportunity" nor the drug deal that Defendant

---

[3] At the charge conference, Defendant's trial counsel argued that Ford "heard that idea and also encouraged [Defendant] to do it," which in Defendant's trial counsel's understanding meant that the trial court "can strike out the first person"—i.e., the person who originated the criminal plan—for purposes of analyzing the second element of entrapment.

pursued to take advantage thereof originated with Ford or any other agent of the State and (2) Defendant himself brought the criminal opportunity to Ford's attention, we conclude that Defendant has failed to demonstrate that "the origin of the criminal intent lies with the law enforcement agencies" and that he "entertained no prior criminal intent" for purposes of showing the second element of entrapment. *Id.* at 28, 296 S.E.2d at 449 (internal quotation marks, emphasis, and citation omitted). We accordingly conclude that Defendant was not entitled to an entrapment instruction, and that the trial court did not err by denying Defendant's request for the same.

### B. Civil Judgment/Opportunity To Be Heard

N.C. Gen. Stat. § 7A-455 allows the trial court to enter a civil judgment against a convicted indigent defendant for attorney's fees and costs. Before a judgment imposing attorney's fees may be entered against him, an indigent criminal defendant must be given notice and an opportunity to be heard thereupon. *State v. Jacobs*, 172 N.C. App. 220, 235-36, 616 S.E.2d 306, 316-17 (2005) (vacating civil judgment for attorney's fees because "there is no indication in the record that defendant was notified of and given an opportunity to be heard regarding the appointed attorney's total hours or the total amount of fees imposed").

Defendant argues that he was not given an opportunity to be heard regarding the attorney's fees contemplated within the civil judgment entered against him, and the State concedes in its brief that, if we grant Defendant's petition for a writ of

certiorari and reach the civil judgment as we have, the trial court's failure to provide Defendant with an opportunity to be heard before the civil judgment was entered was error. We agree with the parties that the civil judgment must accordingly be set aside.

## IV. Conclusion

Because we conclude that Defendant failed to make the requisite showing to be entitled to an instruction on the affirmative defense of entrapment, we discern no error in the criminal judgment, and affirm it. Because Defendant was not given an opportunity to be heard before the trial court entered the civil judgment against him, we vacate the civil judgment and remand to the trial court for a new hearing on attorney's fees.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

Judges ARROWOOD and HAMPSON concur.