STATE OF NORTH CAROLINA v. HERBERT P. COOK.

(Filed 24 February, 1965.)

**1. Criminal Law §§ 7, 106—**
   The burden is on defendant to prove his defense of entrapment to the satisfaction of the jury, and an instruction placing the burden upon the State to disprove the defense beyond a reasonable doubt is favorable to defendant.

**2. Criminal Law § 106—**
   A charge that if after considering all the evidence the jury was not satisfied beyond a reasonable doubt of defendant's guilt to acquit him, *held* not error for failure to inform the jury that it could consider the lack of evidence relating to some of the elements of the offense in determining whether the State had carried the requisite degree of proof. The distinction in a charge that reasonable doubt is a "rational doubt growing out of the evidence" is pointed out.

**3. Criminal Law § 161—**
   A charge to the jury will be construed as a whole and error cannot be predicated upon detached portions which are not prejudicial when so construed.

**4. Larceny § 8—**
   Where a contract between an oil company and a filling station operator constitutes gasoline in the storage tanks of the filling station the property of the oil company by construction of the contract as a matter of law, the court is not required to submit to the jury the question of whether the oil company or the filling station operator owned the gasoline.

**5. Same; Larceny § 3—**
   The value of property within the purview of the larceny statute is its fair market value, and where all the evidence of such value is that it exceeded $200, the court is not required to submit the question of the larceny of goods of a value less than $200.

**6. Criminal Law § 165.1—**
   Defendant may not complain of a charge which he himself has requested.

STATE *v.* COOK.

APPEAL by defendant from *Copeland, S.J.,* July 13, 1964 Criminal Session of MECKLENBURG, docketed and argued as No. 222 Fall Term 1964.

Defendant was charged and convicted of stealing 1208 gallons of gasoline, the property of Gulf Oil Corporation, which had a value in excess of $200.00. The court imposed a prison sentence. Defendant excepted and appealed.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*Warren C. Stack and James L. Cole for defendant appellant.*

RODMAN, J.   The evidence would permit a jury to find these facts: James Atkinson was, in January 1964, operating a service station on Independence Boulevard in Charlotte. The service station was owned by Gulf Oil Corporation (Gulf). On May 31, 1962, Gulf and Atkinson, as part of a single transaction, executed three documents. One was captioned "SERVICE STATION LEASE," another "CONTRACT OF SALE," the other "AUTOMOTIVE GASOLINE AGREEMENT (DELIVERY AND STORAGE)." The lease required Atkinson to conduct his business in such manner that the value of the property as a service station would not be depreciated. He specifically agreed to "furnish such services and accomodations to retail gasoline customers at such times as are customarily provided by gasoline service stations in Dealer's area * * *."

The contract of sale obligated Atkinson to purchase from Gulf the petroleum products sold at the service station. One of the conditions enumerated in the contract of purchase provided: "When transportation is furnished by SELLER, SELLER'S liability ceases and title passes to PURCHASER when bulk product passes connection between SELLER'S delivery hose and PURCHASER'S receiving connection."

The delivery and storage agreement recites: "WHEREAS, the parties hereto desire to provide for Dealer a readily available and adequate supply of automotive gasolines and to relieve Dealer of the necessity of investing capital which is and otherwise would be represented by automotive gasoline inventories." Based on this recital, the parties agreed:

> "1.   Dealer authorizes Gulf at any time while this Agreement is in effect to deliver such grades of automotive gasoline into the storage tanks now located or later installed by Gulf at said premises in such quantities and at such times as Gulf sees fit * * *.

"2. Dealer agrees to hold and care for all gasoline delivered hereunder without compensation as the property of Gulf, it being understood and agreed that until said gasoline is purchased by Dealer as herein provided, title to all said gasolines shall be vested in and remain the property of Gulf * * *.

"4. * * * Dealer is authorized to sell the gasoline to his customers in the ordinary course of his business at such prices and on such terms as Dealer shall determine, and it is agreed that title to said gasoline shall pass to Dealer at the meters on the pumps. Dealer shall pay Gulf for all gasoline so purchased and withdrawn by dealer * * *.

"6. The pumps, meters and computers located upon the premises have been jointly checked by Gulf and Dealer * * *."

About midnight on January 31, 1964, a red tractor with tank trailer was driven to Atkinson's Gulf Station on Independence Boulevard, and "approximately 1,208 gallons of gasoline were pumped into one of the two storage compartments located in said red tanker from the underground storage tanks located and situated upon the property known as Atkinson's Gulf Station." The station was not open for business at that time.

Police officers of Charlotte discovered the tractor-trailer as it was pumping gasoline from the storage tank. Defendant Cook was present and in charge of the tractor-trailer. When accosted by the police officers, he said that he was pumping gas into the underground tank. Then asked if he had to use the pump to deliver the gas, he said he had purchased the gasoline. The market value of the 1208 gallons of gasoline pumped from the storage tank to the tractor-trailer was, according to defendant Cook, $253.68. Witnesses for the State fixed the market value in excess of $300.00.

At no time between May 31, 1962 and January 31, 1964, had Atkinson asserted any claim to, or ownership of, the gasoline in the underground storage tanks. He had always asserted it belonged to Gulf; it had not at any time asserted Atkinson's ownership of the gasoline in the underground storage tanks. It regularly invoiced him with the gasoline pumped from the underground tanks. The amount taken from the storage tanks was measured by meters on the pumps making retail deliveries.

Defendant contends: The evidence would justify a jury in finding that there had been an epidemic of thefts of gasoline from service stations in Charlotte. The Charlotte police, acting through Atkinson, induced Cook to take Gulf's gasoline from the underground tank. He relied on his purchase from Atkinson when he pumped the gas from the

tank. He was beguiled and led to commit a crime by Atkinson, who was acting for and on behalf of the Police Department.

The court treated the evidence as sufficient to raise the defense of entrapment. Conceding, without deciding, that the evidence was sufficient to warrant submission of the question of entrapment to the jury, the first question for determination is: Did the court err in its charge relating to the burden of proof on the defense of entrapment?

The court told the jury defendant could not be convicted if he had been entrapped. The court defined entrapment in apt language, to which no exception was taken. It then stated the ingredients of the crime of grand larceny, explaining that the essential facts must be found beyond a reasonable doubt before the jury could return a verdict of guilty, and if the State had failed to establish these facts beyond a reasonable doubt, the jury should return a verdict of not guilty. It then said:

> "(And further, you will add to that instruction the matter of entrapment, which the Court has previously instructed you, and it will be your duty, in addition, to find beyond a reasonable doubt in this case that the defendant has not been entrapped, as the Court has defined that term to mean to you). And it will be your duty to bring in a verdict of not guilty as to this defendant if there is a reasonable doubt in your minds as to the matter of entrapment. You will give him the benefit of that doubt and you will acquit him in such event."

Thereupon the court inquired: "Are there any further contentions in this regard?" Counsel for defendant answered: "No, sir, your Honor."

Defendant assigns as error that portion of the charge included in parentheses, contending the court placed the burden on the defendant of establishing his defense of entrapment by proof beyond a reasonable doubt. The construction now placed on the charge is not only at variance with what defendant seemingly understood the court to mean when the charge was given, but is a misconstruction of what the court said.

Actually, the burden of establishing entrapment rests on the defendant to establish it to the satisfaction of the jury, but the court, instead of placing the burden where it properly belonged, put the burden on the State to disprove the defense of entrapment; and not only put the burden on the State to disprove that defense, but to disprove it beyond a reasonable doubt. The charge was more favorable to the defendant that he was entitled. *State v. Brown*, 250 N.C. 209, 108 S.E. 2d 233; *State v. Caldwell*, 249 N.C. 56, 105 S.E. 2d 189; *State v. Holbrook*, 228 N.C. 582, 46 S.E. 2d 842; *State v. Harris*, 223 N.C. 697, 28 S.E. 2d 232; *State v. Davis*, 214 N.C. 787, 1 S.E. 2d 104, 22A C.J.S. 319.

Defendant assigns as error these portions of the charge: .

"(If, after considering, comparing and weighing the evidence, the minds of the jurors are left in such a condition that they cannot say that they have an abiding faith to a moral certainty in the defendant's guilt, then they have a reasonable doubt; otherwise, not) * * * (Now, in this case the burden of proof remains with the State of North Carolina from the beginning to the end of this trial. The burden of proof as such never shifts)."

Defendant contends these excerpts from the charge are prejudicially erroneous because: (A) The jury was limited in determining guilt or innocence to the evidence offered, whereas the court ought to have also informed the jury that it could consider the failure of the State to offer evidence relating to some ingredient of the crime charged; and (B) the court did not include in the last quoted paragraph the *quantum* of proof required, and thereby permitted the jury to return a verdict of guilty without finding defendant guilty beyond a reasonable doubt.

To support his contention that the charge is erroneous because it limits the jury's consideration to the evidence offered, defendant cites and relies on *State v. Braxton*, 230 N.C. 312, 52 S.E. 2d 895, and *State v. Tyndall*, 230 N.C. 174, 52 S.E. 2d 272. In each of the cited cases the vice in the charge given was the phrase used in defining reasonable doubt as "a rational doubt *growing out of the evidence in the case.*" The court in those cases pointed out that a doubt might arise because of the absence of evidence, and that the phrase *growing out of the evidence* unduly restricted the jury in determining whether there was a reasonable doubt. The objectionable language referred to in those cases was not used in this instance. The charge here given is substantially in accord with *State v. Schoolfield*, 184 N.C. 721, 114 S.E. 466.

The court, just before defining "reasonable doubt," had told the jury that defendant's plea of not guilty created a presumption of innocence, which surrounded him and continued throughout the trial "unless and until the State of North Carolina by competent evidence has satisfied you, and each of you, of his guilt beyond a reasonable doubt." When the charge is construed as a whole, as we must, we think it inconceivable that the jury could have misunderstood that, to return a verdict of guilty, they must find from the evidence and beyond a reasonable doubt that the defendant had committed the crime charged. Error cannot be predicated on detached sentences or portions of a charge. *State v. Davis*, 259 N.C. 138, 129 S.E. 2d 894; *State v. Peeden*, 253 N.C. 562, 117 S.E. 2d 398; *State v. Hammonds*, 241 N.C. 226, 85 S.E. 2d 133.

Defendant assigns as error the following portion of the court's charge:

"[I]f you find from the evidence and beyond a reasonable doubt that the defendant feloniously took and carried away the property and goods of the Gulf Oil Corporation of the value of more than $200.00, without its consent and against its will, and that such property was taken and carried away by defendant with the felonious intent to deprive the owner of its property permanently and to convert the same to his own use or to the use of some person other than the rightful owner, if you find these to be the facts beyond a reasonable doubt, it will be your duty to render a verdict of guilty against the defendant. If you fail to so find, it will be your duty to render a verdict of not guilty; or if upon a fair and impartial consideration of all the facts and circumstances in the case, you have a reasonable doubt as to the defendant's guilt, it will be your duty to give the defendant the benefit of such doubt and acquit him."

It is defendant's contention that the quoted instruction is a peremptory instruction. He contends the jury was afforded no opportunity to determine either ownership of the gasoline taken or its value.

The court, after summarizing the evidence, had instructed the jury in unmistakable language that defendant could not be convicted unless at the time he pumped the gasoline from the tank, he had a felonious intent; that if he acted *bona fide,* believing that Atkinson was the owner, and that he was purchasing the gas from Atkinson, there would be no felonious intent; nor could he be convicted unless the gasoline in the storage tank was in fact the property of Gulf Oil Corporation; and further that defendant could not be convicted of the offense with which he was charged "unless the State of North Carolina has proved to you beyond a reasonable doubt that the value of the alleged stolen property; to wit: the gasoline, had a value in excess of $200." The charge was not peremptory; to the contrary, it was in substance the language which defendant incorporated in his request for instructions to the jury. He cannot now complain that the language which he selected was either inept or inadequate.

Defendant, in this Court, takes the position that the contract between Gulf and Atkinson vested title in Atkinson the moment the gasoline was placed in the storage tanks; or if not the owner as a matter of law at that moment, the jury should have been instructed to ascertain the "connection between Seller's delivery hose and Purchaser's receiving connection." It is, we think, apparent that the quoted language of the contract has no application to the facts of this case. The three writings executed contemporaneously constituted a single agreement composed of different parts or chapters. When the contract is read as a

whole, it is apparent that "Purchaser's receiving connection" is not the underground storage tank, but the meter on the pump which pumps the gasoline from the storage tank to Atkinson's customers. All openings to the tanks, except through the retail pumps, were sealed with Gulf's seal. For a period of nearly two years, the parties had interpreted the contract as vesting title in Atkinson only when the gasoline was pumped from the tank through the meter measuring the sale to the retail customer. The contract must be interpreted to effectuate the intention of the parties. That intent may be shown by an interpretation given to the contract by the parties over a long period of time. *Preyer v. Parker*, 257 N.C. 440, 125 S.E. 2d 916; *Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 123 S.E. 2d 590; *Power Co. v. Membership Corp.*, 253 N.C. 596, 117 S.E. 2d 812; *Cole v. Fibre Co.*, 200 N.C. 484, 157 S.E. 857.

Defendant requested the court to charge the jury that he could not be convicted of the offense charged unless the jury found beyond a reasonable doubt that the value of the property stolen exceeded $200. The court acted on defendant's request and so charged the jury. It is now contended that the charge was erroneous. This contention would have merit if there was any basis to support a finding that the gasoline did not have a value in excess of $200.

Defendant seemingly misinterprets the meaning of the word "value." He argues his motion for nonsuit should have been allowed because Atkinson, when he acquired title to the gasoline, had the right to fix its value; Atkinson was not asked to put a value on the 1208 gallons of gasoline pumped by defendant into his vehicle, and since he did not put a value on the property, the State failed to establish any value for the gasoline taken. The word "value," as used in the statute, does not mean the price at which the owner would sell, but means, as the court charged, fair market value. *Hager v. Whitener*, 204 N.C. 747, 169 S.E. 645; 52 C.J.S. 851. The court properly overruled the motion to nonsuit. The reason assigned in support of the motion was not sufficient.

We have examined each of appellant's assignments of error. We find no others warranting discussion.

No error.