STATE OF NORTH CAROLINA v. CHRIS RANDOLPH MORSE

No. COA08-663

(Filed 6 January 2009)

**Criminal Law— instruction—entrapment**

The trial court did not err by denying defendant's request to instruct the jury on entrapment in a prosecution for knowingly soliciting a person believed to be a child by computer with intent to commit an unlawful sex act because: (1) the essence of entrapment is a two-step inquiry involving evidence tending to show both inducement by government agents and that the intention to commit the crime originated not in the mind of defendant, but with law enforcement officers; (2) assuming arguendo that defendant's evidence met the first prong of the entrapment defense, uncontroverted evidence showed that defendant had previously engaged in sexually explicit communications with other users in adults only chat rooms and even met with one of those users to engage in sexual contact, defendant admitted he had previously chatted with underage juveniles, and defendant took the more active role in both the sexually charged conversation and in planning the meeting in the instant case; (3) defendant's lack of record of molestation or other similar offensive conduct did not constitute credible evidence that defendant lacked predisposition to commit the specific crime of soliciting a child by computer with intent to commit an unlawful sex act, nor did the fact that the deputies found no evidence of child pornography; and (4) even viewing all the evidence in the light most favorable to defendant, there was no credible evidence from which a jury might reasonably infer that the criminal design originated in the minds of the government officials, and instead the evidence indicated that undercover deputies merely provided the opportunity for defendant to violate N.C.G.S. § 14-203.2.

Appeal by defendant from judgment entered 29 November 2007 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 17 November 2008.

*Roy Cooper, Attorney General, by Caroline Farmer, Deputy Director, N.C. Department of Justice, and Lindsey Deere, Assistant Special Counsel, for the State.*

*Duncan B. McCormick for defendant-appellant.*

STATE v. MORSE

[194 N.C. App. 685 (2009)]

JOHNSON, Judge.

Chris Randolph Morse ("defendant") appeals from conviction and judgment of knowingly soliciting a person believed to be a child by computer with intent to commit an unlawful sex act, in violation of N.C.G.S. § 14-202.3. He argues on appeal that the trial court committed reversible error by denying his request to instruct the jury on the defense of entrapment. We disagree and affirm the trial court's ruling.

The evidence at trial tended to show that, on Wednesday, 30 August 2006, defendant, a twenty-two-year-old enlisted man stationed at Fort Bragg, entered an adults-only Yahoo chat room under the screen name "chris morse." Although Yahoo required its users to be at least eighteen years of age, and listed this chat room under the categories of "Romance" and "Adult," Yahoo did not require users to confirm their ages to gain access to the chat room. Each user in the chat room had a public profile containing personal information entered by the user and accessible by other users in the chat room. Upon entering the chat room, defendant began chatting with another user known by the screen name "baywatch142000." Baywatch142000's profile indicated that she was a student named Jill Watson, and listed her age as "114" years old. Her profile also included a photograph of a young blonde woman. In a section of the profile labeled "latest news," baywatch142000 wrote, "Actually 14."

Within the first minute of chatting, the following exchange occurred:

chris morse:  what r u up to todaY

baywatch142000:  JUs hanginout . . . school . . . just got home . . .

chris morse:  cool

chris morse:  yoru in college then

baywatch142000:  14

chris morse:  lol u look like yoru 21 at least

baywatch14200:  wish i was . . .

Within minutes, defendant sent baywatch142000 the address of his MySpace.com page, which included his name, address, personal photographs, and information about his service in the military. Defendant asked baywatch142000 whether she liked older guys, to which she responded, "I do . . . . guys my age are too immature."

Defendant then asked baywatch142000 if she was a virgin. When she replied yes, defendant asked about her bra size and what she was doing for the weekend. Baywatch142000 responded that her parents might leave town for the weekend, and the two began discussing meeting somewhere. Defendant initially suggested a hotel "with one bed not two." At one point in the conversation, baywatch142000 commented, "me bein 14 . . . probably wouldnt be good idea to take me back to base . . . . What u think?" Defendant replied, "prolly not. So your house would be the best right if your parents go right." Later in their chat, defendant asked baywatch142000 if she had pubic hair. Baywatch142000 indicated that she did, then told defendant that she was inexperienced and looking for an older "friend." Defendant responded that she could practice by doing sexual favors for him and asked her to promise that she would give him her virginity.

Over the next two days, defendant continued to chat online with baywatch142000, in anticipation of their upcoming weekend rendezvous. Defendant told baywatch142000 that he would bring a digital camera to take "pics" that he could show to his buddies in Kuwait. He also asked baywatch142000, "what high school do u go to in greensboro," to which she responded, "Western Guilford." The two arranged to meet on the evening of Friday, 1 September 2006 in Greensboro after defendant got off work. After defendant left the Fayetteville area on Friday, he kept in touch with baywatch142000 by chatting with her on his cell phone, which had Internet capabilities. The two chatted until defendant was outside baywatch142000's parent's apartment, at which point defendant asked baywatch142000 to come to the door. A young woman fitting baywatch142000's description opened the apartment door, and defendant entered to find another woman, who identified herself as a local news reporter, sitting in an armchair. The reporter told defendant to sit down on a couch across from her, which he did. The reporter then told defendant that she was aware of his chats with a girl whom defendant believed to be fourteen years old. The reporter asked defendant why he would engage in such sexually explicit chats with someone he believed to be fourteen years old and then drive to meet that person, believing that her parents were out of town. In response to the reporter's questions, defendant apologized and admitted it was wrong for him to be there.

After several minutes of this sort of conversation between the reporter and defendant, law enforcement officers entered the apartment and placed defendant under arrest. After his arrest, defendant

signed a written *Miranda* waiver and gave two statements to Detective Eaton of the Guilford County Sheriff's Department. From defendant's statements, Detective Eaton drafted two non-verbatim written confessions, which defendant then reviewed and signed. The written confessions provided in part:

> It was during this first chat that she told me she was 14 years old, and lived in Greensboro. I told her I was 22 years old. . . . I suggested we should meet . . . at her parent's apartment and I might even spend the night. . . . I wasn't sure what to expect when I got there. I was hoping for a good time, maybe involving sex or just cuddling. I have not done this before with a juvenile. I have chatted with young girls before, but I have never arranged to meet them. I have met with three (3) adult females before whom I have met in chat rooms. These have all been within the last two years and one of the in-person meetings even resulted in sex. For tonight, I knew what I was doing and am not under the influence of any drug or alcohol. I am embarrassed and take full responsibility for my actions.
>
> . . . .
>
> I admit that I said some very sexual things and had talked about engaging in sexual acts with Jill. The acts may have been touching each others genitals and/or even full on sexual intercourse. But again, I admit I was the one chatting with the 14 year old girl . . . .

Subsequent to defendant's arrest, deputies obtained a search warrant to search defendant's residence. A detective examined defendant's computer, external hard drive, and digital camera card. The officers did not locate any child pornography or other evidence that defendant had previously chatted online with a minor. However, the day after he was taken into custody, defendant called his mother through the Pay-Tel system at the jail. During defendant's conversation with his mother, which was recorded and transcribed for the record, defendant admitted believing that the person with whom he had been chatting online was fourteen years old.

At trial, it was revealed that baywatch142000 had been created by Deputy Gordy, a thirty-seven-year-old male employee of the Guilford County Sheriff's Department. Deputy Gordy created the profile for baywatch142000 as part of a law enforcement sting operation designed to catch adults who solicit children on the Internet for

purposes of meeting for sexual acts. The photograph used for bay-watch142000's profile was actually a photograph of Deputy Luther, a female employee of the Guilford County Sheriff's Department, who was twenty-two years old at the time the photo was taken. Deputy Luther also served as the decoy who answered the door of the apartment. Before defendant's arrival in Greensboro, the Sheriff's department had placed cameras inside and outside the apartment where defendant went to meet baywatch142000. Footage of defendant's admissions to the reporter and subsequent arrest were shown to the jury and included in the record on appeal.

Upon taking the witness stand, defendant was asked why he didn't stop when Baywatch142000 responded, "14" to his question about whether she was in college. Defendant responded:

> I blew right by it. I wasn't focused on anything but what I saw in her profile, the picture. People . . . people lie all the time online. And nobody's age is true until you meet them in person. They can say all day long they're one age, and it's not true, until you see them in person. So . . . .

Defendant also testified that the photograph on baywatch142000's profile was blurry and that, to him, this indicated that she must be older, since, in defendant's experience with online chat rooms, younger users tend to be more computer savvy and exhibit better-looking pictures. Defendant also testified that he asked bay-watch142000 for more pictures but did not receive any.

At the close of evidence, defendant requested that the jury receive instructions including the entrapment defense. The trial court denied defendant's motion to include jury instructions on entrapment, on the grounds that there was insufficient evidence "to show anything beyond merely providing opportunity to commit the crime." Thereafter, the jury returned a verdict finding defendant guilty of violating N.C.G.S. § 14-202.3. Defendant received an active sentence of 6-8 months. From this judgment and conviction, defendant appeals, arguing the trial court erred by refusing to instruct the jury on the defense of entrapment. We disagree.

"Entrapment is a complete defense to the crime charged." *State v. Branham*, 153 N.C. App. 91, 99-100, 569 S.E.2d 24, 29 (2002). In general:

> [t]he defense of entrapment consists of two elements: (1) acts of persuasion, trickery or fraud carried out by law enforcement offi-

cers or their agents to induce a defendant to commit a crime, (2) when the criminal design originated in the minds of the government officials, rather than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities.

*State v. Walker*, 295 N.C. 510, 513, 246 S.E.2d 748, 749-50 (1978); *see also State v. Redmon*, 164 N.C. App. 658, 662, 596 S.E.2d 854, 858 (2004). We note that this is a two-step test and the absence of one element does not afford the defendant the luxury of availing himself of the affirmative defense of entrapment. *See State v. Hageman*, 307 N.C. 1, 28, 296 S.E.2d 433, 449 (1982).

To be entitled to an instruction on entrapment, the defendant must produce "*some credible evidence* tending to support the defendant's contention that he was a victim of entrapment, as that term is known to the law." *State v. Burnette*, 242 N.C. 164, 173, 87 S.E.2d 191, 197 (1955) (emphasis added). In determining whether a defendant is entitled to a jury instruction on entrapment, the trial court must view the evidence in the light most favorable to the defendant. *See State v. Jamerson*, 64 N.C. App. 301, 303, 307 S.E.2d 436, 437 (1983). "The instruction should be given even where the [S]tate's evidence conflicts with defendant's." *Id.* (citations omitted).

In *State v. Luster*, 306 N.C. 566, 295 S.E.2d 421 (1982) (Exum, J., dissenting), our Supreme Court noted that, "the essence of entrapment, then, is the inducement by law enforcement officers or their agents of a person to commit a crime when, but for the inducement, that person would not have committed the crime." *Id.* at 587, 295 S.E.2d at 433. A clear distinction is to be drawn between inducing a person to commit a crime he did not contemplate doing, and the setting of a trap to catch him in the execution of a crime of his own conception. *See State v. Salame*, 24 N.C. App. 1, 6-7, 210 S.E.2d 77, 81 (1974) (citing *Burnette*, 242 N.C. at 169, 87 S.E.2d at 194), *cert. denied*, 286 N.C. 419, 211 S.E.2d 800 (1975). The determinant is the point of origin of the criminal intent. *See id.* at 7, 210 S.E.2d at 81. Because of its significance in determining the origin of the criminal intent, "when the defense of entrapment is raised, defendant's predisposition to commit the crime becomes the central inquiry." *Id.* at 10, 210 S.E.2d at 83. *See also United States v. Russell*, 411 U.S. 423, 436, 36 L. Ed. 2d 366, 376 (1973) (holding that a finding of predisposition is fatal to defendant's claim of entrapment). Our Supreme Court has made clear the following:

It is well settled that the defense of entrapment is not available to a defendant who has a predisposition to commit the crime independent of government inducement and influence. The fact that governmental officials merely afford opportunities or facilities for the commission of the offense is, standing alone, not enough to give rise to the defense of entrapment.

. . . .

Predisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant the opportunity to commit the crime.

*Hageman*, 307 N.C. at 29-31, 296 S.E.2d at 449-51 (citations omitted). Although the entrapment defense is not available to a defendant who is predisposed to commit the crime, a defendant's assertion of the defense does not impose the burden of proving defendant's predisposition upon the State. *See State v. Cook*, 263 N.C. 730, 733, 140 S.E.2d 305, 308 (1965) (noting that the trial court's instruction, which placed the burden of disproving entrapment upon the State, was error). Instead, the burden of production remains on the defendant. *See Hageman*, 307 N.C. at 27, 296 S.E.2d at 448 (noting that, because entrapment is not a defense which negates an essential element of crime, but is an affirmative defense in the nature of confession and avoidance, defendants who seek to avail themselves of this affirmative defense bear the burden of production); *see also State v. Braun*, 31 N.C. App. 101, 103, 228 S.E.2d 466, 467 (noting that, "[t]hough the question of entrapment was raised by the State's evidence, the burden of proving that defendant was not entrapped did not rest upon the State."), *disc. review denied*, 291 N.C. 449, 230 S.E.2d 766 (1976). In this respect, the defendant's "burden [to produce credible evidence of entrapment] acts as a screening device." John Rubin, *The Entrapment Defense in North Carolina*, § 6.2(b) (Institute of Government, University of North Carolina at Chapel Hill, 2001). "It serves to prevent the defendant from obtaining instructions on defenses supported by mere conjecture or speculation but is not intended to be so rigorous as to keep the jury from receiving instructions on and deciding defenses for which supporting evidence exists." *Id.*

In the case at bar, defendant, pointing to his lack of a criminal record, record of molestation or other similar offensive acts, contends that, though he chatted with baywatch142000, whom he admittedly believed to be a fourteen-year-old girl, in a sexually explicit

manner and arranged to meet with her for sexual contact, he was not predisposed to commit this act. Defendant argues that his lack of a history of such conduct, along with deputies' failure to find any evidence of child pornography or prior chats with minors upon their search of defendant's residence, raises the inference that defendant lacked predisposition. Accordingly, defendant contends, he was entitled to a jury instruction on entrapment. Assuming, *arguendo*, that defendant's evidence has met the first prong of the entrapment defense, defendant's argument on the second prong misconstrues precedent from this Court and our Supreme Court regarding evidence of predisposition as it pertains to the origin of criminal intent.

First of all, as discussed above, the burden of production for the defense of entrapment lies with the defendant. "In the absence of evidence tending to show *both* inducement by government agents *and* that the intention to commit the crime originated not in the mind of the defendant, but with the law enforcement officers, the question of entrapment has not been sufficiently raised to permit its submission to the jury." *Walker*, 295 N.C. at 513, 246 S.E.2d at 750. Where a defendant has not met this initial burden of production, the State need not present any evidence regarding predisposition. *See Cook*, 263 N.C. at 733, 140 S.E.2d at 308. Thus, it is the defendant's burden to produce some credible evidence of lack of predisposition. *See Hageman*, 307 N.C. at 27, 296 S.E.2d at 448. In support of the premise that a lack of a criminal record, record of molestation, or other offensive conduct may act as some credible evidence that the intention to commit the crime originated with law enforcement officers, defendant cites several cases from federal and other state courts. However, after a thorough review of these authorities, we determine that they are either not binding upon us or distinguishable from the case at bar. Furthermore, defendant's argument overlooks the clear language of *Hageman*, which provides that "predisposition may be shown by a defendant's ready compliance, acquiescence in, or willingness to cooperate in the criminal plan where the police merely afford the defendant the opportunity to commit the crime." *Id.* at 31, 296 S.E.2d at 450.

Although defendant did not have a criminal record, record of molestation, or record of other similar offensive acts, uncontroverted record evidence shows that defendant had previously engaged in sexually explicit communications with other users in adults only chat rooms and even met with one of those users to engage in sexual contact. Furthermore, defendant admitted that he had previously chatted

with underage juveniles. Defendant was familiar, not only with the ease with which an underage juvenile could access the adults only chat room, but also with the idea that other users can and often do falsely represent their names, age, and appearance. At trial, defendant admitted that he had looked at baywatch142000's profile, which listed her age as "114" and included, under the recent news section, "Actually 14." Defendant testified, however, that he looked at the profile merely to view baywatch142000's photograph and thus initially overlooked her age. Defendant further contended that he was not thinking about age at all, but rather was in a "sexual mindframe" when chatting with baywatch142000.

In spite of this testimony, defendant admittedly did not hesitate to initiate sexually charged conversation with baywatch142000 within the first few minutes of chatting, or to begin making arrangements to meet for sexual contact. Furthermore, defendant did not, at any time during their chats, express reluctance to meet with baywatch142000, despite baywatch142000's repeated references to her age. Baywatch142000 made it clear that she was a fourteen-year-old high school student, a virgin, and interested in finding an older friend in order to gain sexual experience. She indicated that her age would make it difficult for them to meet at Fort Bragg, but that her parents were out of town for the weekend. Throughout their chats, baywatch142000 was, for the most part, merely responsive to defendant's suggestions, while defendant took the more active role in both the sexually charged conversation and in planning their meeting.

The crime with which defendant was subsequently charged, knowingly soliciting a person believed to be a child by computer with intent to commit an unlawful sex act, is a violation of N.C.G.S. § 14-202.3. N.C.G.S. § 14-202.3 provides in part:

> (a) A person is guilty of solicitation of a child by a computer if the person . . . *knowingly*, with the intent to commit an unlawful sex act, *entices, advises, coerces, orders, or commands*, by means of a computer, . . . a person the defendant believes to be a child who is less than 16 years of age and who the defendant believes to be at least 3 years younger than the defendant, to meet with the defendant or any other person for the purpose of committing an unlawful sex act.

N.C. Gen. Stat. § 14-202.3 (2005) (emphasis added).

Solicitation, as the term is utilized in N.C.G.S. § 14-202.3, elementally involves some impetus on defendant's part, rather than mere

acquiescence. The statute provides that an individual who "entices, advises, coerces, orders, or commands" is guilty of solicitation. Our precedent indicates that a trial court may properly refuse to instruct a jury on entrapment when "defendant required little urging before acquiescing" to requests by undercover officers. *See State v. Thompson*, 141 N.C. App. 698, 707, 543 S.E.2d 160, 166 (2001). Here, the record contains ample evidence which tends to show that defendant did *more* than merely acquiesce and cooperate with a plan formed by police. Transcripts of defendant's chat with baywatch142000, along with defendant's written statements and trial testimony, show that he initiated all sexually charged conversation, formulated and detailed the plan for meeting to have sexual contact, and even followed through on that plan with "little urging" from undercover deputies. Such initiative goes far beyond the mere "compliance, acquiescence in, or willingness to cooperate" which is sufficient to show predisposition. *See Hageman*, 307 N.C. at 31, 296 S.E.2d at 450. Thus, although the State did not bear the burden of producing evidence of defendant's predisposition to solicit a person believed to be a child by computer with intent to commit an unlawful sex act, such evidence is present in the record.

Furthermore, defendant's lack of a record of molestation or other similar offensive conduct does not constitute credible evidence that defendant lacked predisposition to commit the specific crime of soliciting a child by computer with intent to commit an unlawful sex act. The same may be said for the fact that deputies found no evidence of child pornography. Such evidence may be relevant to whether or not defendant was predisposed to commit acts of overt molestation or illegally possess child pornography, but are not directly indicative of defendant's predisposition to commit the crime at issue here. With respect to the fact that deputies found no evidence of prior chats with minors, the lack of such evidence is negated by defendant's own admission that he had chatted with underage juveniles in the past.

Even viewing all of the evidence in the light most favorable to defendant, there is no credible evidence from which a jury might reasonably infer that the criminal design originated in the minds of the government officials, rather than defendant, such that the crime was the product of the creative activity of the government. Instead, the evidence indicates that undercover deputies merely provided the opportunity for defendant to violate N.C.G.S. § 14-203.2 and, when presented with that opportunity, defendant pursued it

with little hesitance. Because defendant did not produce some credible evidence in support of each element of the defense of entrapment, the trial court properly denied defendant's request to instruct the jury on entrapment.

No error.

Judges WYNN and STEPHENS concur.