An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-450

Filed 4 March 2026

Randolph County, No. 23CR375500-750

STATE OF NORTH CAROLINA

v.

JOSEPH BARRIER SHUPING, Defendant.

Appeal by defendant from judgment entered 23 August 2024 by Judge Craig Croom in Randolph County Superior Court. Heard in the Court of Appeals 13 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Narcisa Woods, for the State.*

> *The Chetson Firm, PLLC, by Damon Chetson, for defendant-appellant.*

FLOOD, Judge.

Defendant Joseph Barrier Shuping appeals from the trial court's judgment finding him guilty of, *inter alia*, solicitation of a child by computer pursuant to N.C.G.S. § 14-202.3(a). On appeal, Defendant argues the evidence was insufficient for a reasonable juror to believe he "entice[d], advise[d], coerce[d], order[ed], or command[ed]" the person he believed to be a child, as required to establish the act of

solicitation. N.C.G.S. § 14-202.3(a) (2023). Here, where the evidence demonstrated, at minimum, that Defendant enticed his intended victim, we conclude the trial court properly denied Defendant's motion to dismiss.

## I. Factual and Procedural Background

This case arises out of an incident on 2 August 2023 in which Defendant, a 61-year-old man, entered a home he had been informed would contain a fifteen-year-old girl he had been messaging for several weeks online. Defendant was indicted on 13 November 2023 for one count of indecent liberties with a child, one count of solicitation of a child by computer, one count of attempt to commit a statutory sex offense with a person age fifteen or younger, and one count of solicitation to commit a statutory sex offense with a person age fifteen or younger. Of these, the State pursued only the first three at Defendant's trial, dismissing the solicitation to commit a statutory sex offense charge prior to Defendant's trial on 22 August 2024.

During Defendant's trial, the State presented evidence that, beginning on the evening of 14 June 2023, Defendant introduced himself via Facebook to "Jess Smith"—a fifteen-year-old girl, according to the online account. In actuality, "Jess Smith" was a wholly fictitious profile created by Detective Seth Williams of the Davidson County Sherriff's Office for the purpose of apprehending perpetrators of internet sex crimes targeting children. Detective Williams testified that, in his messages with Defendant between 14 June 2023 and Defendant's arrest on 2 August 2023, the conversations became increasingly sexually explicit, with Defendant

indicating he wanted to kiss "Jess" on her "neck, mouth, tits, stomach, [and] between [her] legs," as well as "[f]inger" her. At multiple points throughout the exchange, "Jess" told Defendant she was fifteen years old and therefore "too young for [him]."

Over the course of their conversations, Defendant expressed an interest in visiting "Jess" in person, though he also expressed that he and "Jess" "would have to behave" if he did because he "could get in trouble[.]" On 10 July 2023, when Defendant expressed reservations as to whether he should be further involved with "Jess," "she" indicated that the relationship between the two would be over:

> [Defendant:] What you doing today
>
> . . . .
>
> ["Jess":] . . . I think my friend is going to come by and we are going to eat and hang out
>
> . . . .
>
> [Defendant:] Ok y'all better behave
>
> [Defendant:] Are you going to behave
>
> ["Jess":] I don't know, you didn't want to come see me so what does it matter
>
> [Defendant:] lol ok
>
> [Defendant:] And if I come see you we would have to behave too . . . .
>
> . . . .
>
> ["Jess":] there you go playng [sic] those games again

- 3 -

[Defendant:] lol you are under age I could get in trouble and I don't want that to happen

["Jess":] okay well I dont want you to get in trouble either so ill stop talking to you

[Defendant:] But I like taking [sic] with you if you like taking [sic] to me

["Jess":] i do but i all ready told you i dont like games and you play a lot of them. You talk about fingering one day and wanting to meet and then you tell me that we have to behave when we meet. it just like talking to a boy my own age. thats why i talk to older guys they arent supposed to be stupiud [sic] and full of shit with all these games.

["Jess":] i got to go begfore [sic] my friend gets mad im talking while with him, BYE!!!!

[Defendant:] I understand that but I thought we said we couldn't do those things

["Jess":] It is what it is

["Jess":] It was nice talking to you

[Defendant:] You not going to talk to me anymore

["Jess":] Told you I'm not playing bull shit games, and I'm not forcing anyone to do anything they don't want to or get anyone in trouble

[Defendant:] Ok but we can still talk

["Jess":] Pass

[Defendant:] So the only way you would talk to me is if we got together?

["Jess":] im not saying that but you want to play games talking about fingering me and then telling me we arent

meeting up thats bullshit

[Defendant:] I said we would have to behave

["Jess":] k

Three days later, after several unreciprocated attempts at contact by Defendant, the two had a similar exchange:

[Defendant:] You are really pretty

["Jess":] what are you talking about

[Defendant:] I think you are really really pretty

["Jess":] but just to[o] young for you right

[Defendant:] Just a little I don't want you or me to get in trouble

["Jess":] okay

["Jess":] bye then

[Defendant:] It's not that I don't like talking to you I enjoy talking with you

["Jess":] nah its all good dont want to get anyone in trouble and like I said before I AM NOT PLAYING GAMES with a grown ass man.

[Defendant:] That's not playing games it's being safe

["Jess":] okay so if talkin[g] to me wil[l] get you in troouble [sic] there is no point in talking

[Defendant:] Talking to you w[o]nt get me trouble as long as we behave on here

["Jess":] we both know that isnt going to happen

[Defendant:] lol I know

["Jess":] so like I sAID PLAYING GAMES

["Jess":] all the other older guys i talk to dont play these damn games and tell me what they want

[Defendant:] What do they tell you what they want

["Jess":] thats not your business i would never tell what someone else said to me

[Defendant:] That's good I glad

[Defendant:] Have you tasted yourself yet[1]

["Jess":] nope you ruined that with your bs

[Defendant:] How's that

["Jess":] talking shit then saying we cant do that

[Defendant:] I wish we could but I can't go there

["Jess":] ok then quit talking to me and ill find someone

---

[1] Likely in reference to the following exchange on 8 July 2023:

[Defendant:] Have you ever tasted your self

["Jess":] What do you mean

[Defendant:] Like when you fingering your self have you tasted your fingers and you finger your self

["Jess":] Oh no I didn't know that was a thing

["Jess":] People really do that

[Defendant:] Yes

["Jess":] Oh my

that can go there

[Defendant:] But I enjoy talking to you

["Jess":] if you say so

[Defendant:] I really do

Over the next week, Defendant and "Jess" continued to exchange mostly-unrelated pleasantries, interspersed with a handful of similar messages about Defendant's "games[.]"

On 19 July 2023, Defendant sent another message indicating he was at home, as well as that "at home [he does not] wear anything . . . ." After requesting a picture of "Jess" and having his request rejected, Defendant reiterated that he was "in [his] recliner in [his] birthday suit[,]" at which point "Jess" requested a picture. Defendant asked what "Jess" wanted to see, at which point "she" said "[n]othing." Defendant then proceeded to send a shirtless picture of himself in his recliner, after which he continued to press "Jess" for a picture. "Jess" indicated that "she" would not send him a picture because of his reservations about their respective ages, and Defendant indicated that he was "over that":

> [Defendant:] [W]hy want [sic] you send me a pic of you
>
> ["Jess":] Cause last time you got all weird and shit
>
> [Defendant:] You have only sent me one pic just of your face
> and I said you were really pretty
>
> ["Jess":] Yeah then you started your bullshit about me
> being to[o] young and that we could never do anything so

- 7 -

why would I send you a pic

[Defendant:] I'm over that now

["Jess":] over what

[Defendant:] The bullshit

["Jess":] what changed

[Defendant:] Just did

["Jess":] if you say so, we will see

For the rest of July, the two continued contact that consisted largely of pleasantries, with "Jess" occasionally denying Defendant's requests for pictures.

Finally, on 1 August 2023, "Jess" indicated to Defendant that "she" was "hanging out in [his] town tonight . . . ." The next day, 2 August 2023, this resulted in Defendant attempting to meet "Jess" while "she" was in the shower:

["Jess":] Have fun at work

[Defendant:] Always do thanks

["Jess":] K

[Defendant:] When will you know I'm going to a baseball game later

["Jess":] Just go to the game

[Defendant:] It doesn't start till 7:15

["Jess":] Well what you want to do

[Defendant:] I'd like to meet you before I go to the game

["Jess":] And do what

[Defendant:] Get to see each other

["Jess":] Nah just go to the game

["Jess":] Why

[Defendant:] So I hug you and kiss you

["Jess":] Where are you planning on kissing me

[Defendant:] Lips

["Jess":] K

[Defendant:] Can I come now

["Jess":] Nope

[Defendant:] Why not

["Jess":] Already told you a guy I met on discord is coming to see me

[Defendant:] What time is he coming

["Jess":] He is supposed to text me when he is close

[Defendant:] How long will that be

["Jess":] I just said he is supposed to txt me when he is close

[Defendant:] An hour?

["Jess":] Don't know

[Defendant:] So why can't I just come by and give you a kiss

["Jess":] You seriously just going to come by and give me a kiss on the lips

[Defendant:] If you want me to

["Jess":] I mean weeks ago you talked about getting putting your fingers inside me and now your [sic] are talking about kissing me on the lips

[Defendant:] You want me to do that

["Jess":] I just want to know what to expect when you get here I've told you that l hate playing these games and that's all you want to do

["Jess":] Other guys aren't afraid to tell me what they want and want me to do and it's frustrating that one day your taking [sic] about fingeri[n]g me and then you talk about kissing on me on the lips it confussing [sic]

[Defendant:] I'll do that if you want me to

. . . .

["Jess":] Well he is about an hour out so have a good night

[Defendant:] I can come now we will have time

["Jess":] Nah I got to take a shower

[Defendant:] Dang

["Jess":] Have fun at your game

[Defendant:] I want to have fun with you

["Jess":] If you say so

[Defendant:] So can I come now

["Jess":] No

["Jess":] Maybe next time you talk to a female be more open

about what you want instead of being [] so shady

[Defendant:] I told you I want you

["Jess":] No you didn't

[Defendant:] I told you I want to kiss you and finger you

[Defendant:] If that what you want

["Jess":] I do[n']t want you to do anything you don't want to do you are the one that [could] get [in] [t]rouble for this not me

. . . .

[Defendant:] You are saying I'm the one that could get in trouble

["Jess":] Yeah

[Defendant:] Oh ok I don't want to get in trouble

["Jess":] I do[n']t want you to get Introuble [sic] either

["Jess":] I'm sure that if you show up there will be more than fingerings going on

[Defendant:] Like what would be more than fingering

["Jess":] You know that it wouldn't stop at fingering

[Defendant:] What do you think would happen

["Jess":] I don't know you tell me

. . . .

[Defendant:] You Said more would happen so you tell me

["Jess":] Okay I'm getting in the shower have a good night

[Defendant:] Would you take me a pic

["Jess":] Nope

[Defendant:] Dang itwhy not

["Jess":] Cause I'm done playing these games with u

[Defendant:] I told you what I do

[Defendant:] Enjoy your shower

["Jess":] Enjoy your game

[Defendant:] I really want to see you

[Defendant:] But you don't want me to come see you

["Jess":] Yeah

[Defendant:] Yeah you don't want me to come over or do you want me to come over

["Jess":] If you want to come get in the shower with me you can

[Defendant:] What is the address

["Jess":] It's off Dixie let me figure it out

["Jess":] There's a sheet near here

["Jess":] Can you stop and get me some twizzlers

[Defendant:] Sure

[Defendant:] I need the address

["Jess":] [Detective Williams provides a street address.]

[Defendant:] K

["Jess":] What are you driving so I can look for the car

[Defendant:] A black Ford Ranger truck extra cab

["Jess":] Okay

["Jess":] I'll be waiting can't wait to see you

["Jess":] How long till u get here

[Defendant:] What is parked in the carport

["Jess":] There's a 4runner in the drive but it's the woman's
I'm house sitting for

[Defendant:] I m here are you going to come out

["Jess":] Im naked comeon in

[Defendant:] What door

["Jess":] Front

Defendant was arrested when he arrived.

At the close of the State's evidence, Defendant moved to dismiss all three charges. The trial court granted the motion with respect to the statutory sex offense charge and denied it with respect to indecent liberties and solicitation of a child by computer. Defendant renewed the motion at the close of all evidence, and the trial court denied the motion once again with respect to the two remaining charges.

The jury convicted Defendant of both the indecent liberties and solicitation of a child by computer charges. Defendant now appeals.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to review this appeal from a final judgment of a superior court pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. <u>Analysis</u>

Defendant's sole argument on appeal is that the trial court erred when it failed to dismiss his solicitation of a child by computer charge for insufficient evidence. Specifically, Defendant contends the evidence was insufficient for a reasonable juror to believe that he had met the statutory requirement that he "entice[d], advise[d], coerce[d], order[ed], or command[ed]" the purported child "with the intent to commit an unlawful sex act[.]" N.C.G.S. § 14-202.3(a) (2023).[2] As the State's evidence in this case cleared the low hurdle necessary to establish the evidence was sufficient to survive a motion to dismiss, we disagree.

Our Supreme Court has explained the legal standards governing the denial of a defendant's motion to dismiss as deferential to a potential juror's interpretation of the evidence:

> In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion. In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be

---

[2] There is no serious dispute on appeal as to Defendant's age, the age he believed the person he was meeting to be, or whether he acted with the intent to commit an unlawful sex act; therefore, our analysis will focus solely on the element Defendant contests in his brief.

considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. In other words, if the record developed at trial contains substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Golder*, 374 N.C. 238, 249–50 (2020) (internal citations and quotation marks omitted). Moreover, for purposes of our appellate review, "[w]hether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *Id.* at 250.

Pursuant to N.C.G.S. § 14-202.3(a)(2),

[a] person is guilty of solicitation of a child by a computer if the person is 16 years of age or older and the person knowingly, with the intent to commit an unlawful sex act, entices, advises, coerces, orders, or commands, by means of a computer or any other device capable of electronic data storage or transmission, any of the following:

. . . .

(2) A person the defendant believes to be a child who is less than 16 years of age and who the defendant believes to be at least five years younger than the defendant, to meet with the defendant or any other person for the purpose of committing an unlawful sex act.

N.C.G.S. § 14-202.3(a)(2) (2023). "Solicitation, as the term is utilized in N.C.G.S. § 14-202.3, elementally involves some impetus on defendant's part, rather than mere acquiescence." *State v. Morse*, 194 N.C. App. 685, 693–94 (2009). Even so, N.C.G.S. §

- 15 -

14-202.3(a) defines a defendant's involvement disjunctively, imposing liability if a defendant "entices, advises, coerces, orders, *or* commands" the child or person the defendant believes to be a child to meet in order to commit an unlawful sex act. N.C.G.S. § 14-202.3(a) (2023) (emphasis added); *see also State v. Fraley*, 202 N.C. App. 457, 464–65 (analyzing separately whether the defendant "advised" or "enticed" the person believed to be a child and applying a different definition to both terms), *disc. rev. denied*, 364 N.C. 243 (2010).

Here, the State's evidence regarding the character of the solicitation itself consisted primarily of the messages Defendant and Detective Williams exchanged on Facebook Messenger. In reviewing this evidence, there are several statements Defendant made that, on their face, constituted "enticing" "Jess," including a statement of his desire to "hug and kiss" "Jess," "I want to have fun with you," "I want to kiss you and finger you," and "I really want to see you[.]" *See id.* at 464 ("Entice has been defined as: 'to lure; to lead on by exciting hope of reward or pleasure; to tempt[.]'" (citing *Webster's New 20th Century Dictionary* (2d ed. 1960))). These statements, in the mind of a rational juror, could have constituted the act of solicitation on the day Defendant arrived at the address provided by Detective Williams. *See Golder*, 374 N.C. at 249–50.

Even beyond the direct language used in the chat between Defendant and Detective Williams, though, we are mindful that "intent may be read from a defendant's acts, conduct, and inferences fairly deducible from all the circumstances,"

not just the exact language the online messages contained. *State v. Wilkinson*, 288 N.C. App. 99, 102 (2023) (citation modified). As discussed previously, in reviewing whether the evidence might convince a rational juror that the act of solicitation occurred, we must construe the evidence in the light most favorable to the State. *Golder*, 374 N.C. at 249–50. Therefore, despite Defendant's contention on appeal that "the State's evidence was quite clear that 'Jess[]' invited [Defendant] to come to her house and join her in the shower[,]" we must interpret the evidence in a manner favorable to the State and reflective of how a reasonable juror could have interpreted the character of Defendant's remarks given his prior message history with "Jess."

Here, especially given Defendant's cognizance that he could face consequences for his conduct given his age, Defendant's repeated attempts to make "Jess" describe what "she" wanted to take place on the night of his arrest could be construed as an attempt at enticement within the parameters of a desire he could not make explicit without creating a proverbial smoking gun for the very liability he now faces. In the mind of a rational juror, this may seem especially plausible in light of the sexual nature of several of Defendant's historical exchanges with "Jess" and Defendant's statements indicating his remarks would not "get [him in] trouble as long as [he and "Jess"] behave on here"—with "here" most likely referring to the traceable, written record that is Facebook Messenger.

In light of these possible interpretations of the evidence, we cannot say the trial court erred in denying Defendant's motion to dismiss his solicitation of a child

by computer charge.

## IV. <u>Conclusion</u>

Upon review, the trial court did not err in denying Defendant's motion to dismiss where the evidence before the jury could have established to a rational juror that, at minimum, Defendant attempted to entice a fifteen-year-old to meet for the purpose of committing an unlawful sex act.

NO ERROR.

Judges STROUD and GORE concur.

Report per Rule 30(e).